**ENVIRONMENTAL DEFENSE FUND, INC., et al., Appellants,**

v.

**Robert F. FROEHLKE, Secretary of the Army, et al., Appellees.**

**No. 72–1628.**

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 16, 1973.

Decided April 20, 1973.

---

Edward Lee Rogers, Gen. Counsel, East Setauket, N. Y., for appellants.

Eva R. Datz, Atty., Dept. of Justice, Washington, D. C., for appellees.

Lyman Field and F. Philip Kirwan, Kansas City, Mo., for intervenors.

Before HEANEY and ROSS, Circuit Judges, and BENSON, Chief District Judge.*

HEANEY, Circuit Judge.

The primary issue on this appeal is whether the trial court erred in refusing to enjoin the defendants from proceeding with all activities relating to the construction of the Harry S Truman Dam and Reservoir Project on the Osage River in Missouri, pending the filing of a

* District of North Dakota, sitting by designation.

final Environmental Impact Statement (E.I.S.) by the Corps of Engineers in accordance with § 102(2)(C) of the National Environmental Policy Act of 1969. 42 U.S.C. §§ 4321, 4332(2)(C).

The project was authorized by Congress in 1954. Its basic purpose was to alleviate the flooding of towns and farms along the Osage, Mississippi and Missouri Rivers. The project was reauthorized in 1962 to promote conservation, power development and recreation. The dam, if built according to present design, will consist of an earth-fill embankment about 5,000 feet in length, a concrete structure slightly less than 1,000 feet long, and a dike 7,500 feet in length. Maximum height of the dam will be ninety-six feet above the valley floor. The reservoir will inundate 209,300 acres at full flood control pool and 55,600 acres of land at conservation or multi-purpose level. The reservoir's capacity is 5,202,000 acre-feet at flood control level. The dam will be located in the vicinity of Warsaw, Missouri, immediately upstream from the Lake of the Ozarks. The expected total cost of the project to the federal government is $234,692,000.

The first contract was awarded on July 15, 1963, six years prior to the passage of NEPA. By June of 1972, $74,000,000 had been expended for planning, land acquisition, road relocation and construction.

In March of 1972, the plaintiffs initiated this action in the United States District Court for the Western District of Missouri, seeking to enjoin the defendants from proceeding with the project. They contended that the defendants were proceeding with the project in violation of NEPA, the Fish and Wildlife Coordination Act of 1934,[1] 16 U.S.C. §

661 et seq.; the Environmental Improvement Act of 1970, 42 U.S.C. § 4371; the Water Bank Act of 1970, 16 U.S.C. § 1301 et seq.; various other statutes and the United States Constitution. The principal violation alleged was the failure to prepare and file an E.I.S. pursuant to § 102(e) of NEPA. The plaintiffs asked the court to enjoin road relocations, land acquisitions, construction activity and all other work on the project until a final E.I.S. was filed in accordance with NEPA.

Carefully directed pretrial proceedings were conducted by the court in March and April, 1972. In May of 1972, the court held an evidentiary hearing on the merits. Thereafter, the parties stipulated that the environmental impact of the project would be significant, particularly with respect to fish fauna, archaeological and paleontological sites, wildlife and waterfowl habitat, mussels, society, agriculture and economics.

The parties further stipulated that certain activities would be halted by the Corps of Engineers pending the completion of a final E.I.S. They agreed: (1) that a draft E.I.S. would be prepared by September 15, 1972, and a final E.I.S. by March 1, 1973; (2) that the plaintiffs could include data, comments and statements as appendices to the studies; and (3) that specified guidelines would be followed by the Corps in preparing the study. They were unable to agree on the crucial question of whether the Corps should be required to cease all activities until the final E.I.S. had been filed and reviewed. That question was left for the court to decide.

The District Court's judgment, accompanied by a detailed and scholarly memorandum opinion, was entered on September 13, 1972. Environmental Defense

1. The District Court stated:
"* * * The question, for example, of to what extent, if any, the requirements of the Fish and Wildlife Coordination Act, 16 United States Code §§ 661 et seq., may be applicable may be presented at some later stage of this case and need not now be decided."

Environmental Defense Fund, Inc. v. Froehlke, 348 F.Supp. 338, 364 (W.D. Mo.1972).
We agree that this issue can be handled at a later stage of this proceeding. See, Environmental Defense Fund, Inc., et al. v. Robert F. Froehlke, Secretary of the Army, et al., 473 F.2d 346, at 355 (8th Cir. 1972).

Fund, Inc. v. Froehlke, 348 F.Supp. 338 (W.D.Mo.1972). The court held that the plaintiffs were entitled to judicial review of the defendants' actions, and that the defendants were obligated to comply with the provisions of NEPA in completing the project, even though the project was well under way before NEPA was passed.[2] It found that the Corps had started the preparation of an E.I.S. prior to the commencement of this action and was completing it as fast as the circumstances permitted. It enjoined the defendants from proceeding with certain activities and contracts, including those which the defendants had agreed to defer, but permitted the defendants to continue certain on-going construction activities, road relocations, cemetery relocations, voluntary property acquisitions, and design contracts, pending the filing of a final E.I.S. Moreover, it retained jurisdiction of the matter pending the filing of the final E.I.S.

The court held, however, that the plaintiffs were not entitled to an injunction halting all work on the project pending a final E.I.S. It did so on the grounds that not every violation of NEPA gives rise to a right to blanket injunctive relief. The court stated:

"It is our judgment that the procedures provided for in the final judgment and decree, if and when complied with, will assure full compliance with NEPA and all other applicable law as promptly as is practicable under the circumstances. It is further our judgment that the issuance of a blanket injunction stopping all construction would not speed the preparation or enhance the probabilities that a sufficient EIS will be prepared. Under these circumstances, we believe

that a proper balancing of the factors which must be given appropriate consideration under general equity principles requires that the most substantial costs incident to the termination or suspension or work to an extent greater than that provided in the final judgment and decree should be avoided."

Environmental Defense Fund, Inc. v. Froehlke, *supra* at 353. The court gave the following additional reasons for its action:

(1) The work, which will go forward pending the filing of an E.I.S., will only have a minimal environmental impact on the Osage Basin. No work will be done on the dam which will impede the free flow of the river and affect the fish, wildlife and wildfowl habitat in or along the river. The new roads will affect some wildlife habitat, but the old road sites will, in time, partially replace the habitat lost.

(2) The project was commenced six years prior to the passage of NEPA, and a number of contracts have been let pursuant to congressional authorization. Substantial cost would be involved in terminating these contracts. Additional costs would be incurred in start-up costs if the ultimate decision is to proceed. Moreover, the defendants were in various stages of acquiring land, and the cost involved in terminating such acquisitions would be substantial.

(3) The Corps of Engineers was acting in good faith in bringing the project into compliance with NEPA. It began the preparation of a preliminary E.I.S. prior to the initiation of this action. It filed that statement in October, 1972, and committed itself to filing a final E. I.S. by May 1, 1973. It agreed to per-

---

2. See, Environmental Defense Fund, et al. v. Tennessee Valley Authority, et al., 468 F.2d 1164 (6th Cir. 1972); Scherr v. Volpe, 466 F.2d 1027 (7th Cir. 1972); Arlington Coalition on Transportation v. Volpe, 458 F.2d 1323 (4th Cir. 1972); Environmental Law Fund v. Volpe, 340 F.Supp. 1328 (N.D.Cal.1972); Morningside-Lenox Park Assn. v. Volpe, 334 F. Supp. 132 (N.D.Ga.1971); Nolop v. Volpe, 333 F.Supp. 1364 (D.S.D.1971); Guidelines for Federal Agencies Under the National Environmental Policy Act, 36 Fed.Reg. 7724, 7727 (1971). See also, Environmental Defense Fund, Inc., et al., v. Corps of Engineers of the United States Army, et al., 470 F.2d 289 at 292 (8th Cir. 1972).

mit the plaintiffs to file data, comments and statements with the Corps for inclusion in the E.I.S. It also committed itself to follow the guidelines set out by the court in preparing the final E.I.S.

(4) The families involved desire that the cemetery relocations be continued.

▮▮▮ We affirm the trial court's judgment. A trial court must consider all the circumstances in determining whether a project may be permitted to proceed pending the completion of an E.I.S. See, Environmental Defense Fund, Inc., et al. v. Robert F. Froehlke, Secretary of the Army, et al., 473 F.2d 346, at 356, n. 21 (8th Cir. 1972). We recognize that the injunction is the vehicle through which the congressional policy behind NEPA can be effectuated, and that a violation of NEPA in itself may constitute a sufficient demonstration of irreparable harm to entitle a plaintiff to blanket injunctive relief. See, Environmental Defense Fund, et al. v. Tennessee Valley Authority, et al., 468 F.2d 1164 (6th Cir. 1972); Environmental Defense Fund, Inc., et al. v. Robert F. Froehlke, Secretary of the Army, et al., No. LR–71–C–199 (E.D.Ark. March 8, 1973).

▮▮▮ Here, we find that the trial court did not abuse its discretion in granting limited injunctive relief. The record bears out the trial court's finding that the river and life within it would not be harmed while the E.I.S. was being completed, and that only minimal environmental damage would be inflicted on the adjacent land during that period. Moreover, the record supports the trial court's finding that the road relocations had insignificant environmental effects and had independent economic benefits.

The record also supports the trial court's conclusion that substantial additional costs would be incurred by the defendants if they were forced to discontinue the project and restart it at a future date. It also convinces us that the amount of money projected to be spent on the project in the intervening period is not sufficient to affect the balance of costs and benefits that must be struck by the defendants and other decision-makers in determining whether or not to continue this project after the final E.I.S. is filed.[3]

In short, we are persuaded that this is not a case where, unless the plaintiffs receive now whatever relief they are entitled to, "there is [a] danger that it will be of little or no value to them or to anyone else when finally obtained." Lathan v. Volpe, 455 F.2d 1111, 1117 (9th Cir. 1971).

In conclusion, we note that the District Court has retained jurisdiction of this matter. It will thus, if prompt requests are made, have an opportunity to rule on the sufficiency of the new E.I.S. and an opportunity to review, under the arbitrary and capricious test, the decision made by the defendants with respect to proceeding with the project.

Affirmed.

---

3. The District Court stated:

" * * * Plaintiffs' implicit concern that the ultimate judgment of Congress may be affected by the amount of previously authorized money that may actually be spent by the time it reviews the EIS is not a proper argument for the judicial forum. * * * "

Environmental Defense Fund, Inc. v. Froehlke, supra at 348 F.Supp. 354. We disagree. As the Court in Environmental Defense Fund, et al. v. Tennessee Valley Authority, et al., supra 468 F.2d at 1183, states:

" * * * [T]he more time and resources appellants are allowed to invest in this project, the greater becomes the likelihood that compliance with section 102 of the NEPA, and the reconsideration of the project in light of the provisions of section 101, will prove to be merely an empty gesture. Arlington Coalition on Transportation v. Volpe, supra, 458 F.2d at 1327, 1332–1334. * * * "

As a practical matter, the amount of money already expended on pre-NEPA projects will enter into the calculus of decision-makers determining whether or not to go ahead with the project. It is a factor which a court must take into account in determining whether to enjoin on-going construction. See, Environmental Defense Fund, Inc., et al., v. Corps of Engineers of the United States Army, et al., supra 470 F.2d at 301.