**The SANSOM COMMITTEE et al.**

v.

**James LYNN, Individually and as Secretary, Department of Housing and Urban Development, Washington, D. C., et al.**

**Civ. A. No. 73–1444.**

United States District Court,
E. D. Pennsylvania.

July 31, 1974.

See also D.C., 366 F.Supp. 1271; 382 F.Supp. 1245.

Robert J. Sugarman, Philadelphia, Pa., for plaintiffs.

Walter Batty, Philadelphia, Pa., Asst. U. S. Atty., for HUD.

C. David Rosenbloom, Philadelphia, Pa., for Redevelopment Authority.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

NEWCOMER, District Judge.

### FINDINGS OF FACT.

1. Plaintiffs are residents and merchants of a city block in West Philadelphia, enclosed on the North by Walnut Street and on the South by Sansom Street and bisected by Moravian Street. The area between Walnut Street and Moravian Street shall hereinafter be referred to as the "Walnut Street properties" and the area between Moravian Street and Sansom Street shall be referred to as the "Sansom Street properties".

2. The defendants are the Redevelopment Authority of Philadelphia, which is the landlord of all the properties on the block in question, and the U. S. Department of Housing and Urban Development, which has acted in the past and is continuing to act as a partner with the Redevelopment Authority in that agency's urban renewal plans for the block.

3. Plaintiffs brought suit in this Court in June, 1973, claiming that defendant Redevelopment Authority (R.A.) altered the proposed demolition and redevelopment plans for the block, changing its proposed use from a predominately academic one to a predominately commercial one. Plaintiffs alleged that this alteration violated several sections of the National Housing Act, 42 U.S.C. § 1441 et seq. (1949). Plaintiffs' further alleged that in approving these changes without issuing an environmental impact statement, HUD violated Section 102 (C) of the National Environmental Policy Act of 1969, 42 U.S.C. § 4332(C).

4. Plaintiffs' motion for a preliminary injunction to prevent the demolition or other alteration of both the Walnut Street and Sansom Street properties was set down for a hearing throughout the summer and fall of 1973, but due to requests for continuance by both parties the matter was never heard. Instead,

the parties entered into an agreement, which was sanctioned by the Court, in which defendant R.A. promised not to take any action with respect to the properties without giving plaintiffs thirty (30) days notice.

5. On February 24, 1974, defendant HUD determined that an environmental impact statement should be prepared for every Neighborhood Development Program in the City of Philadelphia. One such project was University City Unit Four, of which the Sansom and Walnut properties are a part. The environmental impact statement covering University City Project Four was to be completed by September 4, 1974, but it appears from testimony given at the hearing that the impact statement may not be completed before December, 1974, and may possibly be delayed even beyond that date.

6. On May 24, 1974, defendant R.A. informed plaintiffs that it proposed to begin demolishing the Walnut Street properties on July 31, 1974.

7. Most of the Walnut Street properties have been vacant since 1971, when defendant Redevelopment Authority evicted many of the tenants. Some five businesses remain, including a bar, a record shop, and a hoagie shop and grill. There are no residents of the Walnut Street properties.

8. The demolition of the Walnut Street properties will raise the noise level of the Sansom Street properties substantially, but not to the point of rendering those properties uninhabitable.

9. The merchants who are presently tenants of the Walnut Street properties have testified that they have not arranged for their relocation, and that they did not think that they could make such arrangements. They will suffer the hardship inherent in finding new places of business should demolition proceed.

10. The university community, and the Sansom Street residents, will be deprived of the use of these stores. However, these stores are not the only ones of their kind in the area surrounding the University.

11. The Walnut Street properties are dilapidated and deteriorating buildings, ranging in age from 50 to over a 100 years old. Many have wood interiors or adjoining edifices that are made of wood which poses a substantial fire hazard both to the Walnut Street properties themselves and to the adjoining areas, including the Sansom Street properties. The threat of fire is enhanced by the fact that these properties are sanctuaries for derelicts, who could easily start a fire by cooking or smoking cigarettes in the buildings.

12. The Walnut Street properties are becoming progressively more structurally unstable, creating the prospect of collapse which might cause the deaths of derelicts, users of the street, or users of the stores.

13. Although the defendant Redevelopment Authority has taken measures to block entry of the derelicts into the buildings, these measures have proven unsuccessful. It would be difficult if not impossible to secure these buildings against entry by the derelicts.

14. It is doubtful that defendant Redevelopment Authority could, by rehabilitation or other maintenance measures, eliminate the hazards of fire or collapse in the interim between the present and the time the impact statement is completed and its sufficiency fully litigated.

CONCLUSION OF LAW

1. The Court has jurisdiction over this matter by reason of National Environmental Policy Act 1969, 42 U.S.C. § 4321 et seq., and 28 U.S.C. § 1331(a) (Federal Question Jurisdiction).

2. There exists a substantial probability that plaintiffs will show at trial that an environmental impact statement is required before the proposed al-

teration of the Sansom and Walnut Street properties can begin. HUD's extensive financing of the proposed renewal project makes it a "major federal action", and its manifold effects upon the environment make it an action "significantly affecting the quality of the human environment" 42 U.S.C. § 4332(C).

3. Plaintiffs have not shown that the tenants of the Walnut Street properties will be irreparably injured if the demolition should proceed.

4. Work upon a major federal project which will significantly affect the environment should ordinarily await the completion of the environmental impact statement process. Arlington Coalition on Transportation v. Volpe, 458 F.2d 1323 (4th Cir.) cert. den. sub nom. Fugate v. Arlington Coalition on Transportation, 409 U.S. 1000, 93 S.Ct. 312, 34 L.Ed.2d 261 (1973). However, work may proceed upon a project prior to the completion of the environmental impact statement concerning it where inaction by the federal government or its agents poses an imminent threat to the public safety or welfare, at least where that threat cannot be temporarily allayed by other means. Boston Waterfront Residents Association, Inc. v. Romney, 343 F.Supp. 89 (D.Mass.1972). It is in the discretion of the trial court whether work on the entire project must be halted pending completion of the impact statement, or whether work may proceed on a limited area of that project. Environmental Defense Fund, Inc. v. Froehlke, 477 F.2d 1033 (8th Cir. 1973).

5. The safety of the inhabitants and the users of the Walnut Street properties cannot be temporarily safeguarded by methods other than the demolition of the buildings. It would pose an injustified threat to the public welfare if the hazards created by these properties were allowed to continue until the impact statement was prepared and its sufficiency litigated, a process which might take years.