Noa Emmett ALULI, Emma De Fries, Paul Fujishiro, Warren Mills Haynes, Jr., George Helm, Charles Kauluwehi Maxwell, Sr., Karl Anthony Mowat, Adrian Nacua, Kathryn B. Ochwat, Walter S. Ritte, Loretta Ritte, Herbert F. Santos, Richard W. Sawyer and Protect Kahoolawe Association, Plaintiffs,

v.

Harold BROWN, Secretary of Defense, W. Graham Claytor, Secretary of the Navy, James L. Holloway, Chief of Naval Operations, Ralph S. Wentworth, Jr., Commandant of the 14th Naval District, and Thomas B. Hayward, Commander-in-Chief, Pacific Fleet, United States Navy, Defendants.

Civ. No. 76–0380.

United States District Court, D. Hawaii.

Sept. 15, 1977.

Joel E. August, Michael A. Town, Legal Aid Society of Hawaii, Wailuku, Maui, Hawaii, Ronald A. Albu, Legal Aid Society of Hawaii, Honolulu, Hawaii, Melvin M. M. Masuda, Honolulu, Hawaii, Thomas R. Cole, Kahului, Maui, Hawaii, for plaintiffs.

Lt. James W. Rude, Naval Legal Services Office, L. Mark Wine, Land and Natural Resources Division, Dept. of Justice, Washington, D. C., for defendants.

## OPINION AND ORDER

WONG, District Judge.

Plaintiffs have brought this action to declare unlawful and enjoin defendants' bombing activities on the Island of Kahoolawe. Jurisdiction is invoked under 28 U.S.C. §§ 1331, 1361; 16 U.S.C. § 1540; 33 U.S.C. §§ 1365, 1415, and 42 U.S.C. §§ 1857, 4911. A declaration of rights is sought under 28 U.S.C. §§ 2201, 2202. Plaintiffs' federal claims arise from, *inter alia,* the National Environmental Policy Act, 42 U.S.C. § 4321, et seq., the National Historic Preservation Act, 16 U.S.C. §§ 470–470r, and Executive Order 11593.

Part V of the complaint sets forth 13 legal claims. Claim One alleges that "In conducting bombing operations on Kahoolawe without submitting an environmental impact statement with their annual appropriation request for federal monies to fund such operations, Defendants are in violation of 42 U.S.C. § 4332, 40 C.F.R. 1500.5 and 32 C.F.R. 214.6(d)."

Claim Nine alleges that defendants have authorized activities on Kahoolawe which are "inherently destructive to all sites, buildings, district and objects which may exist there, without attempting to adequately locate, inventory, or nominate to the Secretary of the Interior those which would appear to qualify for listing in the National Register of Historic Places in violation of Executive Order No. 11593 and Congressional policy [as enunciated in 16 U.S.C. § 470]."

Plaintiffs have moved for partial summary judgment with respect to Claims One and Nine and seek to enjoin the defendants from conducting any activities on Kahoolawe which are violative of the letter and spirit of Executive Order 11593, 36 C.F.R.

Part 800, and OPNAV Instruction 6240.3D and to comply with the survey and nomination requirements enumerated therein. Plaintiffs further seek to enjoin defendants from conducting any activity on Kahoolawe which has a significant effect on the environment until they have submitted a revised environmental impact statement which quantifies all archaeological sites on the island.

Defendants have countered with a motion for partial summary judgment on Claim Nine, asserting that the National Historic Preservation Act of 1966 (NHPA), 16 U.S.C. § 470f, does not apply to Kahoolawe because the Secretary of the Interior has not determined the island eligible for the National Register of Historic Places, Executive Order 11593 (E.O. 11593) does not provide a private right of action within the jurisdiction of this court, and the Navy's internal historic preservation procedures in its Environmental Protection Manual are internal agency instructions and not regulations within this court's jurisdiction to enforce.

*BACKGROUND*

Kahoolawe is the smallest of the eight main islands of the State of Hawaii. It lies approximately six and three-quarters miles southwest of the Island of Maui. Kahoolawe is eleven miles long and six miles wide at its widest point. Of its area of approximately 45 square miles or 28,777 acres, about 7,750 acres, or one-fourth of the island, is used for air-to-ground weapons delivery and ship-to-shore bombardment by the defendants, using both live and inert ordnance.[1] This area is known as the "normal target zone" and is located in the central portion of the island. Approximately 20 ship-to-shore and 17 air-to-ground targets are currently located within the normal target zone.[2] No targets are located outside this zone.

The defendants or their predecessors have been using Kahoolawe as a site for aerial and surface bombardment since 1941. Executive Order 10436, issued on February 20, 1953 by President Eisenhower, placed Kahoolawe under the jurisdiction of the Secretary of the Navy and reserved the island for naval purposes. Under the Order, when "there is no longer a need for the use of the area [thereby] reserved, or any portion thereof, for naval purposes," the Department of the Navy must notify the Territory (now State) of Hawaii and, upon seasonable request by the latter, render the area reasonably safe for human habitation.

The island is hot, dry, and dusty. Water is scarce; annual rainfall is estimated at approximately 25 inches. Erosion has severely affected several areas. Some plant and animal life is found on Kahoolawe. Scrub *kiawe* trees and *pili* grass cover portions of the island. Domestic sheep and feral goat are present in extensive numbers.

Although the island is presently uninhabited, it was populated from time to time earlier in its history. Early populations probably never exceeded 150 and were probably fishermen.

An archaeological survey conducted by J. Gilbert McAllister in 1931 identified 50 archaeological sites, including *heiaus* (places of worship of ancient Hawaiians), fishing shrines, house foundations, camp sites, burial places, and miscellaneous structures, such as walls, terraces, and piles of stones. According to the Environmental Impact Statement for Kahoolawe, prepared by the Department of the Navy in 1972, 11 of those sites are in the normal target zone. Four of the 11 are less than 500 yards from a target.

In March 1976, an archaeological team from the Office of Historic Preservation, Department of Land and Natural Resources, State of Hawaii, with the cooperation of the Navy, began a survey of Kahoolawe to identify sites of historical and archaeological importance.

---

1. The island is also used for ground combat training.

2. Some targets have been removed from service because of their close proximity to known archaeological sites.

In May 1977, pursuant to a contract between the State and the Navy, a second archaeological team joined the survey. Currently, the two teams spend five days during each month surveying the island. It does not appear that the State presently has sufficient funds to intensify their survey efforts, and the present arrangement appears to be satisfactory to both the Navy and the State. At the current rate of survey, the final report of the survey is expected in February 1979.

The archaeological teams have surveyed 34 percent of the island and have discovered 92 archaeological sites, of which 89 are believed to have met the National Register criteria.[3] About 30 to 35 sites have been found within the normal target zone, the survey of which has been more than 90 percent completed.

*CLAIM ONE*

Claim One is grounded on the National Environmental Policy Act (NEPA), 42 U.S.C. § 4321, *et seq.* 42 U.S.C. § 4332(2)(C), as implemented by 40 C.F.R. Part 1500, requires the preparation and circulation of environmental impact statements (EIS) "on proposals for legislation and other major Federal actions significantly affecting the quality of the human environment."

A Draft Environmental Impact Statement of the Department of the Navy on the Kahoolawe Island Target Complex was filed on November 16, 1971. The Final Environmental Impact Statement was filed on April 28, 1972. This court found that, as a matter of law, the then defendants had satisfied all requirements of NEPA. *Cravalho v. Laird,* Civ.No. 71–3391 (1972). The defendants now contend that having complied with NEPA in 1972, they need not now file another, EIS.

Since the filing of the 1972 EIS, 92 sites have been discovered by archaeological teams under the supervision of Dr. Hommon, archaeologist for the Office of Historic Preservation, although only 34 percent of the island has been surveyed. In the opinion of Dr. Hommon, approximately 89 would meet the National Register criteria for listing in the National Register. Within the normal target zone, about 30 to 35 sites have been found. This compares with the figure of 11 thought to be within the target zone as disclosed by the 1972 EIS. Upon completion of the survey of the entire island, it is expected many additional sites will be found.

Moreover, since the 1972 EIS, controversy concerning the use of Kahoolawe as a target range has developed and several major pieces of federal environment legislation enacted. These recent significant developments make the filing of a new or revised EIS imperative. In oral argument, counsel for the defendants did not dispute the necessity of filing a new or revised statement but contended the proper time would be after the survey has been completed by the archaeological teams.

The language of § 102(2)(C) of NEPA, read properly, is unambiguous when it refers to *proposals* for major Federal actions. It clearly means that the EIS must be submitted prior to the undertaking of the actions. *Environmental Defense Fund v. TVA,* 468 F.2d 1164 (6th Cir. 1972) (EIS required even though no "proposals" had been made since the initial approval of the project).

Plaintiffs urge that the filing of a new or revised EIS should be made whenever de-

---

**3.** 36 C.F.R. § 800.10 states in pertinent part:

 (a) "National Register Criteria" means the following criteria established by the Secretary of the Interior for use in evaluating and determining the eligibility of properties for listing in the National Register: The quality of significance in American history, architecture, archeology, and culture is present in districts, sites, buildings, structures, and objects of State and local importance that pos-

sess integrity of location, design, setting, materials, workmanship, feeling and association and:

 . . . . .

 (4) That have yielded, or may be likely to yield, information important in prehistory or history.

The Office of Historic Preservation believes that the entire Island of Kahoolawe may be eligible for inclusion in the National Register.

fendants submit budget requests, seeking appropriations for naval training operations. Defendants deny this, arguing that Kahoolawe does not appear as a separate budget item, that the amounts spent on Kahoolawe are "miniscule," that the "proposal for legislation" with regard to general annual appropriations requests would be the recommendations to Congress made by the President in his budget and that Congress did not intend NEPA to apply to the President's annual budget requests, and that it is virtually impossible to prepare an EIS within the budget review process period.

Defendants' arguments are all without merit. In holding that the continuing construction of the project was a "proposal for action" within the meaning of section 102(2)(C) of NEPA, and that the defendants were required to file an EIS regarding the project, the Court stated:

> The same result obtains if we construe the phrase "proposals for legislation" in section 102(2)(C) . . . to encompass annual appropriations requests. Under 31 U.S.C. § 22, the head of each federal agency must prepare each year a request for regular, supplemental, or deficiency appropriations to be submitted to Congress by the President under 31 U.S.C. § 11. Unquestionably, to construe these budgetary requests as proposals for legislation within the meaning of the NEPA would facilitate Congress' expressed purpose of constant revision and reevaluation of ongoing projects.
>
> Apparently in recognition of this, the Council on Environmental Quality, in its Guidelines . . . interpreted "actions" covered by section 102(2)(C) to include "[r]ecommendations or favorable reports relating to legislation *including that for appropriations.*" (Emphasis in text.)

468 F.2d at 1181. *See also Sierra Club v. Morton,* 395 F.Supp. 1187 (D.D.C.1975); 40 C.F.R. § 1500.5; 32 C.F.R. § 214.6.

40 C.F.R. § 1500.13 provides that:

> Agencies have an obligation to reassess ongoing projects and programs in order to avoid or minimize adverse environmental effects. The section 102(2)(C) procedure shall be applied to further major Federal actions having a significant effect on the environment even though they arise from projects or programs initiated prior to enactment of the act on January 1, 1970. While the status of the work and degree of completion may be considered in determining whether to proceed with the project, it is essential that the environmental impacts of proceeding are reassessed pursuant to the act's policies and procedures and, if the project or program is continued, that further incremental major actions be shaped so as to enhance and restore environmental quality as well as to avoid or minimize adverse environmental consequences. It is also important in further action that account be taken of environmental consequences not fully evaluated at the outset of the project or program.

■■■ It is undisputed that the use of live ordnance by the defendants on the Island of Kahoolawe may have significant adverse effects and therefore constitutes major Federal action. The question remains as to whether defendants' actions significantly affect the quality of the human environment.

The island is presently uninhabited although in the past, it was populated from time to time. Plaintiffs claim and indeed have dramatically demonstrated that they would like to use the island occasionally at least for religious rites, accelerated survey of the island for historic sites with the view toward their preservation, and for fishing and other purposes. Fishing in the waters surrounding Kahoolawe is presently permitted from time to time when the Navy is not using the island for target practice. It cannot be gainsaid that defendants' shelling of the island, at least with live ordnance, significantly affects the quality of the human environment.

Further, no one denies the existence of archaeological sites on Kahoolawe important to Hawaiian history and culture. The presence of such sites requires the filing of a new or revised EIS.

The purpose of NEPA is to protect and enhance environmental quality. 42 U.S.C. § 4321; 40 C.F.R. § 1500.1(a). The Council on Environmental Quality (CEQ) guidelines state that the

> statutory clause "major Federal actions significantly affecting the quality of the human environment" is to be construed by agencies with a view to the overall, cumulative impact of the action proposed . . . . [The action] may be localized in [its] impact, but if there is potential that the environment may be significantly affected, the statement is to be prepared. Proposed major actions, the environmental impact of which is likely to be highly controversial, should be covered in all cases. . . .

40 C.F.R. § 1500.6(a). An EIS is meant to further NEPA's purpose. *See* 42 U.S.C. § 4332(2)(C).

An action that significantly affects the quality of the human environment is one that either directly affects human beings or indirectly affects human beings through adverse effects on the environment. 40 C.F.R. § 1500.6(c). NEPA says that important historic, cultural, and natural aspects of the nation's heritage are to be preserved. 42 U.S.C. § 4331(b). In order to meet this obligation, the Advisory Council on Historic Preservation has instructed federal agencies to

> coordinate NEPA compliance with the separate responsibilities of the National Historic Preservation Act and Executive Order 11593 to ensure that historic and cultural resources are given proper consideration in the preparation of environmental impact statements.

36 C.F.R. § 800.2.

Thus, it is clear that an EIS must consider the possible effects of major federal actions upon historic and cultural resources. Here, the archaeological teams have already discovered 89 archaeological sites on Kahoolawe which they believe meet the criteria for placement on the National Register pursuant to the National Historic Preservation Act (NHPA). These archaeological sites are a part of the environment of Kahoo-

lawe. Because of their possible importance to Hawaiian history and culture, an adverse effect upon the archaeological sites *may* have a direct effect upon human beings; for example, the plaintiffs. Regardless, the court believes that an adverse effect upon the sites would be an adverse effect upon the environment which would have an indirect effect on human beings. Therefore, the defendants' aerial and surface bombardment of Kahoolawe is a major federal action significantly affecting the quality of the human environment.

The 1972 EIS did consider the sites discussed in the McAllister survey. That survey, however, was incomplete; the current survey has revealed archaeological sites not included in the McAllister survey. The 1972 EIS, therefore, fails to properly consider the effects upon all known archaeological sites on Kahoolawe.

For the foregoing reasons, and because there is no genuine issue as to any material facts, the plaintiffs are entitled to partial summary judgment with respect to Claim One.

## CLAIM NINE

In the complaint, Claim Nine is headed "PRESERVATION OF HISTORIC SITES & EXECUTIVE ORDER NO. 11593." Congress has declared "that the historical and cultural foundations of the Nation should be preserved as a living part of our community life and development in order to give a sense of orientation to the American people". 16 U.S.C. § 470(b). 16 U.S.C. §§ 470–470r constitute the National Historic Preservation Act of 1966.

Pursuant to the NHPA, NEPA, and other acts, Executive Order No. 11593, entitled "Protection and Enhancement of the Cultural Environment," was promulgated on May 13, 1971. Section 1 is a declaration of policy. Section 2 enumerates the responsibilities of Federal agencies, while Section 3 lists the responsibilities of the Secretary of the Interior.

Neither the defendants nor the State have yet made nominations of appropriate

properties for listing on the National Register. Both, however, are currently engaged in a joint effort to identify and evaluate the sites to be nominated. Two archaeological teams, under State supervision, are currently spending five days a month in discovering and evaluating sites and making recommendations to the Navy as to what protective measures should be taken. The teams should complete the survey in another 18 months.

Defendants do not intend to offer for nomination any of the sites heretofore discovered until survey of the entire island is completed. In the interim, defendants have undertaken steps to protect the sites that have already been discovered, such as removing targets in close proximity to them where they might be endangered.

Plaintiffs contend that defendants have not complied with the NHPA or E.O. 11593 and the regulations promulgated pursuant to them, primarily 36 C.F.R. Part 800, nor with the Navy's own historic preservation procedures contained in OPNAV Instruction 6240.3D, which is part of the Navy's Environmental Protection Manual. This court will discuss the NHPA, E.O. 11593 and 36 C.F.R. Part 800, but finds it unnecessary to reach OPNAV Instruction 6240.-3D.

Defendants argue that NHPA does not apply to Kahoolawe since it is not yet on the National Register of Historic Places nor determined eligible for the National Register by the Secretary of the Interior, citing 16 U.S.C. § 470f. Facially, this argument appears to have merit.[4] However, when 16 U.S.C. § 470, in which Congress spells out its finding and declaration of policy, is implemented by 36 C.F.R. Part 800, there can be no doubt that the NHPA is applicable to the defendants, except with respect to certain specific provisions (such as 16 U.S.C. § 470f), which do not presently apply because of the nonfeasance on the part of the defendants.

Defendants, however, assert that plaintiffs do not have a private right of action to enforce E.O. 11593, citing *Independent Meat Packers Ass'n v. Butz,* 526 F.2d 228 (8th Cir. 1975), *cert. denied,* 424 U.S. 966, 96 S.Ct. 1461, 47 L.Ed.2d 733 (1976). In that case, the pertinent Executive Order was found to be one "intended primarily as a managerial tool for implementing the President's personal economic policies and not as a legal framework enforceable by private civil action." 526 F.2d at 236. E.O. 11593, on the other hand, was promulgated as an implementation of the NHPA. As such, it is no mere executive housekeeping tool. E.O. 11593 states explicitly that the order was issued in furtherance of the purposes and policies of several acts of Congress, including both the NEPA and the NHPA. Although neither NHPA nor E.O. 11593 expressly grants a private right of action, such action can be said to be clearly implied since it is necessary to effectuate the purpose of both the act and the order. *See Acevedo v. Nassau County, New York,* 500 F.2d 1078, 1084 (2d Cir. 1974); *Save the Courthouse Committee v. Lynn,* 408 F.Supp. 1323 (S.D.N.Y.1975). This court therefore concludes that E.O. 11593 as well as the pertinent regulations, more specifically 36 C.F.R. Part 800, are applicable to and binding upon the defendants and may be enforced by the plaintiffs in a private right of action.

E.O. 11593 provides in pertinent part that Federal agencies shall institute procedures to assure that Federal plans and programs contribute to the preservation and enhancement of non-federally owned sites and objects of historical and archaeological significance (§ 1(3)). Further, § 2 provides that the head of Federal agencies shall

 (a) no later than July 1, 1973, with the advice of the Secretary of the Interior, and in cooperation with the liaison officer for historic preservation for the State or

---

**4.** Plaintiffs cite *Stop H–3 Association v. Coleman,* 533 F.2d 434 (9th Cir. 1976) in opposition. *Stop H–3,* however, is inapposite inasmuch as in that case the Secretary of the Interior had made a published determination that Moanalua

Valley was eligible for inclusion in the National Register. No such determination has yet been made with respect to any of the Kahoolawe sites.

territory involved, locate, inventory, and nominate to the Secretary of the Interior all sites, buildings, districts, and objects under their jurisdiction or control that appear to qualify for listing on the National Register of Historic Places.

As of July 1, 1973, the defendants had not complied with the foregoing directive. Since that date, it has cooperated with the Hawaii Office of Historic Preservation in the location of possible sites that appear to qualify for listing on the National Register. It has not yet completed the inventory nor has it made any nominations of such sites to the Secretary of Interior.

Subsection 2(b) of E.O. 11593 mandates that the heads of Federal agencies

exercise caution during the interim period until inventories and evaluations required by subsection (a) are completed to assure that any federally owned property that might qualify for nomination is not inadvertently transferred, sold, demolished or substantially altered. The agency head shall refer any questionable actions to the Secretary of the Interior for an opinion respecting the property's eligibility for inclusion on the National Register of Historic Places. . . .

Although the defendants are continuing to bomb Kahoolawe with live ordnance, they are and have been taking such protective actions to assure that the sites (although not federally owned, are nevertheless within federal control) are not inadvertently demolished or substantially altered. This may not have been true in the past but this court is convinced of the defendants' present good-faith efforts to accomplish these objectives. Despite these good-faith efforts, however, there remains the serious question as to whether all possible sites are being protected in view of the fact that only 90 percent of the target zone and only 34 percent of the entire island has been surveyed. Any further actions taken by the defendants which may damage prospective sites should therefore be referred to the Secretary of the Interior.[5] Inasmuch as the undisputed evidence shows that the entire Island of Kahoolawe might qualify for nomination for listing on the National Register, the agency head must refer any questionable actions to the Secretary of the Interior for an opinion respecting the property's eligibility for inclusion in the National Register.

For the foregoing reasons, and because there is no genuine issue as to any material facts, the plaintiffs are entitled to partial summary judgment with respect to Claim Nine.

## RELIEF

Plaintiffs have asked this court, *inter alia*, to enjoin defendants from:

1. Utilizing live ordnance on Kahoolawe until defendants have complied with the requirements of NEPA and Executive Order 11593.

2. Failing to perform all acts required of them by the NEPA and Executive Order 11593.

 In addition, plaintiffs seek to have this court declare that defendants are in violation of NEPA and E.O. 11593. This court has found the defendants to be in violation of NEPA and E.O. 11593 and has therefore granted partial summary judgments against the defendants with respect to Claims One and Nine. This does not mean, however, that an injunction should automatically issue. *Essex County Preservation Ass'n. v. Campbell*, 536 F.2d 956 (1st Cir. 1976); *Environmental Defense Fund, Inc. v. Froehlke*, 477 F.2d 1033 (8th Cir. 1973).

 Injunctive relief should be granted either where the plaintiff can establish a probability of success on the merits and the showing of irreparable injury.

---

5. 36 C.F.R. § 800.4(a)(2) directs that

 If the Agency Official determines that a property appears to meet the [National Register Criteria, set forth in Section 800.10], or if it is questionable whether the Criteria are met, the Agency Official shall request, in writing, an opinion from the Secretary of the Interior respecting the property's eligibility for inclusion in the National Register.

*Rondeau v. Mosinee Paper Corp.*, 422 U.S. 49, 95 S.Ct. 2069, 45 L.Ed.2d 12 (1975). Under the alternate test adopted by the Ninth Circuit, injunctive relief may be granted if there are sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief. *Aguirre v. Chula Vista Sanitary Service*, 542 F.2d 779 (9th Cir. 1976).

■ With respect to the first test, this court finds that plaintiffs will not suffer irreparable injury if the defendants are not presently enjoined from using live ordnance on Kahoolawe. Although about two-thirds of the island remains to be surveyed, the survey of the normal target zone has been completed to the extent of more than 90 percent. Discovery of any site that might be endangered by the use of live or inert ordnance results in the immediate removal by the Navy of any target that is within close proximity to the discovered site. All targets within a 500-yard radius of a ship-to-shore target or within a 300-meter radius of an aircraft target have been removed except for site 124, which is 20 to 30 feet below the surface and is therefore adequately protected because of its underground location. It is true that there is no assurance that all shells are so accurately fired that they fall within the radii mentioned.[6] In addition, several no-drop zones, including some within the normal target zone, have been established within which zones ordnance is not jettisoned except under the direst circumstances.

Under the alternate test, this court does not find the balance of hardships tipping decidedly toward the plaintiffs. Defendants have testified that the military readiness of the Third Fleet would be reduced by 30 to 40 percent. Although no measurement standards were cited in arriving at these figures, the court finds that the reduction would nevertheless be substantial.

Alternative sites were considered and rejected by defendants. The reasons given for their rejection seem reasonable. Considering the potential loss of military preparedness, this court finds that the balance of hardships tip decidedly toward the defendants.

Moving now to plaintiffs' prayer that defendants be enjoined from failing to perform all acts required of them by NEPA and Executive Order 11593, this court finds that plaintiffs have satisfied the two-pronged requirements of the alternate test. Since the court has granted partial summary judgment in plaintiffs' favor with respect to Counts One and Nine, the remaining criterion for granting injunctive relief is whether the hardships tip decidedly toward the plaintiffs. They have met this test. Plaintiffs have evinced a real interest in seeking to have the sites preserved and protected under both the NEPA and NHPA. Defendants have cooperated with the plaintiffs in trying to attain these objectives. They have not, however, complied with all the procedures required of them. Defendants intend to comply with these procedures after the survey has been completed. Nothing in the NEPA or NHPA gives the defendants an option to await the completion of all work before proceeding to make the nominations of the sites to be placed in the National Register, or to comply with the other directives.[7]

## CONCLUSION

1. Partial summary judgment is granted to the plaintiffs and against the defendants as to Claim One; defendants are found to be in violation of 42 U.S.C. § 4332 (National Environmental Policy Act), 40 C.F.R. § 1500.5 and 32 C.F.R. § 214.6(d).

2. Partial summary judgment is granted to the plaintiffs and against the defendants as to Claim Nine; defendants are found to be in violation of Executive Order No.

---

6. Indeed the initial salvo error averages approximately 550 yards, with the maximum miss being 880 yards.

7. It should be noted that the State historic preservation official may also nominate properties for listing in the National Register. E.O. 11593, § 3(a).

11593 and 36 C.F.R. Part 800. Defendants' cross-motion for partial summary judgment on Claim Nine is accordingly denied.

3. Injunctive relief against the defendants enjoining them from using live ordnance on Kahoolawe until defendants have complied with the requirements of NEPA and Executive Order No. 11593 is denied.

4. Defendants are ordered to file an environmental impact statement at least in draft form within 45 days and in final form within a reasonable period of time after the filing of the draft form. They are also ordered to file an environmental impact statement annually so long as they shall continue to bomb Kahoolawe. All such statements may be updated versions.

5. Defendants are hereby ordered to comply forthwith with the applicable provisions of Executive Order No. 11593 and 36 C.F.R. Part 800, including but not limited to the continued full cooperation with the Hawaii Office of Historic Preservation in identifying, inventorying, and protecting historic sites on Kahoolawe; submission for nomination to the Secretary of the Interior of those sites which appear to qualify for listing in the National Register of Historic Places, without waiting for the completion of the survey of the entire island; and referral of its bombing actions on the Island of Kahoolawe to the Secretary of the Interior for an opinion respecting the entire island's eligibility for inclusion in the National Register.

SO ORDERED.

DATED at Honolulu, Hawaii, September 15, 1977.