NORTH SLOPE BOROUGH et al., Plaintiffs,

v.

Cecil D. ANDRUS and Richard A. Frank, Defendants,

Atlantic Richfield Company et al., Intervenor-Defendants.

NATIONAL WILDLIFE FEDERATION et al., Plaintiffs,

v.

Cecil D. ANDRUS and Richard A. Frank, Defendants,

Atlantic Richfield Company et al., Intervenor-Defendants.

VILLAGE OF KAKTOVIK et al., Plaintiffs,

v.

Cecil D. ANDRUS and Richard A. Frank, Defendants,

Atlantic Richfield Company et al., Intervenor-Defendants.

Civ. A. Nos. 79–3193, 79–3199, 79–3216.

United States District Court, District of Columbia.

Dec. 7, 1979.

See also, D. C., 486 F.Supp. 332.

Bruce Terris, Edward M. Comer, Washington, D. C., for plaintiffs in No. 79–3193.

Patrick A. Parenteau, Thomas G. Tomasello, Washington, D. C., for plaintiffs in No. 79–3199.

Clifton E. Curtis, James N. Barnes, Leonard C. Meeker, Center for Law & Social Policy, Washington, D. C., for plaintiffs in No. 79–3126.

Margaret Strand, Department of Justice, for defendants Andrus and Frank in all cases; E. Edward Bruce, John T. Smith, II, Covington & Burling, Washington, D. C., for intervenor-defendants in all cases.

Avrum M. Gross, Atty. Gen., Robert M. Maynard, Asst. Atty. Gen., Robert H. Loeffler and Alan Cope Johnston, Morrison & Foerster, Washington D. C., for amicus curiae State of Alaska.

## MEMORANDUM OPINION AND ORDER

AUBREY E. ROBINSON, Jr., District Judge.

In this case three groups of Plaintiffs have filed suit against Cecil D. Andrus, Secretary of the United States Department of Interior and Richard A. Frank, Administrator of the National Oceanic and Atmospheric Administration, seeking to prevent the sale of oil and gas leases in the Beaufort Sea. Nine major oil producers have been granted leave to intervene as party-defendants, and the State of Alaska has been permitted to appear as amicus in support of the sale.

The sale of these leases is a jointly planned Federal-state action in an area north of the State of Alaska, offshore from the Prudhoe Bay Oil Fields and the northerly terminal of the Trans-Alaska Pipeline which serves Prudhoe Bay. Geographically, the area of the proposed sale is part of the north Alaska coast characterized by offshore, fringing, barrier islands. There is an ongoing dispute between the State of Alaska and the Federal Government over the ownership of the submerged land inside the islands. An action has been filed in the Supreme Court to resolve that dispute, *United States v. Alaska*, 442 U.S. 937, 99 S.Ct. 2876, 61 L.Ed.2d 307. To permit leasing and developing in the area pending the resolution of the dispute, the State of Alaska and the United States have entered into an agreement as authorized by the Outer Continental Shelf Lands Act (OCSLA), 43 U.S.C. § 1336. That agreement provides for the sale and administration of the leases and for the impounding of revenues until the case is decided.

The area of the proposed sale which is the subject of this action contains undisputed state land, undisputed federal land and disputed land. The State and the United States have reached an agreement to hold a joint lease sale involving the area of the disputed land in the near-shore Beaufort Sea, prior to the Supreme Court's decision. By publication in the *Federal Register*, the lease sale was noticed for December 11, 1979.

The Plaintiffs in the *North Slope Borough* action seek to enjoin the sale of any leases by the Federal Government of tracts seaward of the barrier islands. Plaintiffs in the other two actions seek to enjoin the sale of any leases by the Federal Government regardless of the location. They allege that the lease sale will result in immediate and irreparable harm to the environment of the Beaufort Sea, threaten the survival of the Bowhead Whale and existence of the Inupiat Native Alaskans, and is in violation of several statutes, principally the National Environmental Protection Act, the Endangered Species Act, and the Outer Continental Shelf Lands Act.

Before the Court for immediate resolution are motions by all Plaintiffs for a Preliminary Injunction, which motions are strenuously opposed by the named Defendants, the Intervenor-Defendants and the State of Alaska as *amicus.*

The standards that govern this Court's determination of whether a preliminary injunction should issue are those set forth in *Washington Metropolitan Area Transit Commission v. Holiday Tours*, 182 U.S.App. D.C. 220, 559 F.2d 841 (D.C. Cir. 1977), and *Virginia Petroleum Jobbers Ass'n v. FPC*, 104 U.S.App.D.C. 106, 259 F.2d 921 (D.C. Cir. 1958). The Court must consider (1) whether Plaintiffs have demonstrated a substantial likelihood that they will ultimately prevail on the merits; (2) whether Plaintiffs will suffer irreparable harm absent injunctive relief; (3) whether injunctive relief will harm other interested parties; and (4) whether the public interest favors the issuance of injunctive relief pending a determination of the merits.

For Plaintiffs to prevail on the merits, they must prove that the Defendants' actions were arbitrary and capricious. Based on the evidence presented thus far, there is a substantial likelihood that Plaintiffs will meet this burden. The Endangered Species Act, 16 U.S.C. § 1531, *et seq.*, (ESA) requires federal agencies to protect endangered species. The Bowhead Whale and the Grey Whale are endangered species within the meaning of the ESA. The Supreme Court, in interpreting Section 7 of the Act, stated that

> Its very words affirmatively command all federal agencies "to *insure* that actions *authorized, funded, or carried out* by them do not *jeopardize* the continued existence" of an endangered species or "*result* in the destruction or modification of habitat of such species . . . " This language admits of no exception. (Emphasis in the original) *TVA v. Hill*, 437 U.S. 153, 173, 98 S.Ct. 2279, 2291, 57 L.Ed.2d 117 (1978).

Subsequent to *TVA v. Hill*, Congress amended the ESA to provide for an exception. This exception is irrelevant to the instant case, however, because Defendants have not pursued the procedural requirements set forth in § 7 of the Act. Plaintiffs have made a substantial showing (1) that the lease sale will jeopardize the existence of the Bowhead Whale and (2) that the Secretary has not insured that the sale will not jeopardize the Bowheads' existence.

Section 7(d) of the ESA was added to the Act after the decision in *TVA v. Hill, supra.* It states that

> After the initiation of consultation required under subsection (a) of this section, the Federal agency and the permit or license applicant shall not make any irreversible or irretrievable commitment of resources with respect to the agency action which has the effect of foreclosing the formulation or implementation of any reasonable and prudent alternative measures which would avoid jeopardizing the continued existence of any endangered or threatened species or adversely modifying or destroying the critical habitat of any such species.

The lease sale in the instant case is not merely the transfer of a possessory interest in land. It is being effectuated to encourage exploration and subsequent development of oil and gas reserves. Both the lessor and the lessee expect that exploitation of those reserves will inevitably result from the sale. *See* 44 Fed.Reg. 64752 (1979). A massive amount of resources must be invested to facilitate exploration.

Given the Tellico Dam experience, it is clear that the investment of a massive amount of resources before the safety of an endangered species is insured is precisely what Congress intended to preclude with the enactment of § 7(d). Plaintiffs have made a substantial showing that the lease sale in question would violate § 7(d) of the ESA.

 Furthermore, The Outer Continental Shelf Lands Act, 43 U.S.C. § 1331, et seq. indicates that, once a lease has been granted, revocation is unlikely. 43 U.S.C. § 1334(a) provides that cancellation will only occur if the Secretary determines after a hearing that

(i) continued activity pursuant to such lease or permit would probably cause serious harm or damage . . . to the marine, coastal, or human environment;

(ii) the threat of harm or damage will not disappear or decrease to an acceptable extent within a reasonable period of time; and

(iii) the advantages of cancellation outweigh the advantages of continuing such lease or permit in force.

Damages resulting from cancellation of a lease may be formidable. See 43 U.S.C. § 1334(a)(2)(C). Plaintiffs have made a substantial showing that the rights granted to lessees, pursuant to the lease sale, constitute an irreversible and irretrievable commitment of resources within the meaning of § 7(d) of the ESA.

 Plaintiffs have also made a substantial showing on their claim that the Department of the Interior has failed to comply with the requirements of the National Environmental Policy Act, 42 U.S.C. § 4321, et seq. (NEPA). The record presented to the Court lends considerable support to the Plaintiffs' contentions that the Final Environmental Impact Statement (EIS) (1) fails to adequately analyze the cumulative impact of the Beaufort Sea project and other major federal and state projects in the area; (2) fails to consider significant mitigation alternatives for orders and lease terms; and (3) fails to adequately analyze alternatives for managing the Beaufort Sea under the Marine Sanctu-

aries Act, 16 U.S.C. § 1431, et seq. Although an agency's responsibilities under NEPA are governed by a rule of reason, the agency clearly must evaluate significant reasonable alternative courses of action. See State of Alaska v. Andrus, 188 U.S. App.D.C. 202, 216, 580 F.2d 465, 479 (D.C. Cir. 1978). NEPA does not require that complete information about the environmental impact of a project be obtained before a project is undertaken, Id. 188 U.S. App.D.C. at 210, 580 F.2d at 473, and complete information clearly cannot be obtained in this case. NEPA does, however, require that the EIS contain an analysis of the relative environmental merits and demerits of the proposed action and reasonable alternatives. Callaway, 524 F.2d 79, 92 (2d Cir. 1975). See State of Alaska v. Andrus, supra, 188 U.S.App.D.C. at 211, 580 F.2d at 474. Plaintiffs have presented a substantial case that on this occasion the decision-maker was not provided with an adequate analysis or reasonable alternatives.

Despite Plaintiffs' showing on the merits, the Court has concluded that no preliminary injunction should issue because Plaintiffs have not demonstrated that absent such relief they face serious irreparable harm prior to a final determination of the merits. In this regard, the expedited briefing schedule ordered by the Court is relevant. Plaintiffs allege that several distinct irreparable injuries threaten them.

 First, Plaintiffs contend that pre-exploratory and exploratory activities to begin soon after leases are awarded will cause immediate and direct physical damage to the Beaufort Sea environment. The record indicates, however, that exploratory activities will not begin until the fall of 1980 at the earliest. EIS, p. 12. Pre-exploratory activities include sonar tests, seismic tests, bottom sampling and other studies necessary to analysis of the geological and geophysical characteristics of the lease sites that is essential to development of an exploration plan. See 30 C.F.R. § 250.34. Plaintiffs contend that penetration of the sea bottom to a depth as great as 300 feet, the

presence of trucks, trailers, airplane noise and other disturbances will irreparably damage the Bowhead Whale and the Beaufort Sea environment. Although the record indicates that such activities would affect the Bowhead, the Court is unpersuaded that any irreparable harm will result prior to a determination on the merits. Given the expedited treatment being accorded this matter by the parties and the Court, a final determination of the merits will be reached far in advance of the migration of the Bowheads through the lease area during the spring. Moreover, review of bids by the Secretary of the Interior, and an antitrust analysis of the lease sale pursuant to 43 U.S.C. § 1337, may delay issuance of leases for as much as 60 days after the opening of bids on December 11. Argument on the parties cross motions for summary judgment is scheduled for January 3, 1980. The Court is unpersuaded that irreparable harm to the Beaufort Sea environment will result from pre-exploratory activities prior to a determination on the merits.

■ Second, Plaintiffs allege that apart from physical damage to the Beaufort Sea environment, they will suffer irreparable harm absent preliminary relief because their legal rights under relevant statutes and treaties will have been violated. Although under NEPA and the ESA "the imminence of physical steps is not an indispensable condition to preliminary injunctive relief," *Jones v. District of Columbia Redevelopment Land Authority*, 162 U.S.App. D.C. 366, 376, 499 F.2d 502, 512, (D.C. Cir. 1973), and a violation of NEPA may in itself constitute irreparable harm, *Environmental Defense Fund v. Froehlke*, 477 F.2d 1033, (8th Cir. 1973), not all NEPA violations will themselves constitute such harm. NEPA is designed to insure that decisions about federal actions will take into account all environmental consequences of those actions. "Thus, the harm with which the courts must be concerned in NEPA cases is not, strictly speaking, harm to the environment, but rather the failure of decision-makers to take environmental factors into account." *Jones, supra*, 162 U.S.App.D.C. at 376, 499 F.2d at 512. That harm matures simultaneously with NEPA's requirements. *Id.* If, however, a preliminary injunction is not necessary to preserve the decision-making process should Plaintiffs ultimately prevail on the merits, any harm to that process is not irreparable and no injunction should issue. *See State of Alaska v. Andrus, supra*, 188 U.S.App.D.C. at 216, 580 F.2d at 485. In the instant case, should the Plaintiffs prevail on the merits, final relief will be sufficient to preserve the decision-making process given the current stage of the Beaufort Sea project.

■ Third, Plaintiffs argue that they will be irreparably harmed because the sale will result in the vesting of property and contract rights in the lessees. Plaintiffs contend that the standards for cancellation of existing leases by the Secretary under 43 U.S.C. § 1334(a)(2)(A)(i) may preclude cancellation by him until after significant damage to the environment. Those standards, however, will not govern this Court's determination of whether the Secretary's issuance of the leases was proper under NEPA, the ESA and the other statutory provisions on which Plaintiffs rely. Rather the filing of this suit acts as a *lis pendens* on the lease sale. The issuance of leases may in fact restrict the Secretary's options as Plaintiffs contend, but it does not restrict this Court's options in judging the validity of those leases should the Secretary determine to issue them after assessing the obligations imposed on him by statute.

■ In weighing the issuance of preliminary injunctive relief, the Court must consider as well the interest of third parties. In this case, the Court is persuaded that the economic interests of the State of Alaska cut against the issuance of preliminary relief for the reasons stated in its brief as *amicus curiae.*

The public interest is clearly a two-edged sword in this case. In the ESA and NEPA,

Congress has expressed a strong public interest in insuring the preservation of endangered species such as the Bowhead and in preventing damage to the environment. In the OCLSA Congress has mandated development of resources on the outer continental shelf because of the pressing national interest in developing all domestic energy supplies. The Court is persuaded that final relief, if appropriate, will be sufficient to vindicate the public interests that Congress has sought to further through the ESA and NEPA. If, however, Plaintiffs do not prevail on the merits, the issuance of preliminary relief would have hindered the admittedly conflicting public interest in development of outercontinental shelf resources set forth in the Outer Continental Shelf Lands Act.

Based upon the foregoing, it is by the Court this 7th day of December, 1979,

ORDERED, that Plaintiffs' Motions for Preliminary Injunction be and hereby are DENIED; and it is

FURTHER ORDERED, that Plaintiffs shall file their motion for summary judgment and accompanying briefs on or before December 12, 1979; and it is

FURTHER ORDERED, that Defendants shall file their cross motions for summary judgment and accompanying briefs on or before December 24, 1979; and it is

FURTHER ORDERED, that a hearing on the parties cross motions for summary judgment be scheduled for January 3, 1980, at 9:30 a. m.