**CITY OF FAIRBANKS, d/b/a Fairbanks Municipal Utilities System, Appellant,**

v.

**The ALASKA PUBLIC UTILITIES COMMISSION and Wire Communications, Inc., d/b/a Great Land Telephone, Appellees.**

No. 3977.

Supreme Court of Alaska.

May 9, 1980.

Joseph W. Sheehan, Fairbanks, for appellant.

B. Richard Edwards, Anchorage, for appellees.

Before RABINOWITZ, C. J., and CONNOR, BOOCHEVER, BURKE and MATTHEWS, JJ.

## OPINION

MATTHEWS, Justice.

The City of Fairbanks appeals from a decision of the superior court affirming an order of the Alaska Public Utilities Commission which denied Fairbanks a certificate of public convenience and necessity to provide telephone service to the Fort Wainwright Military Reservation, and awarded the certificate to Wire Communications, Inc. (Wirecom) d/b/a Great Land Telephone.

Multiple claims of error are presented. With one exception, we agree with the well reasoned opinion of the superior court. The point on which we differ relates to the Commission's treatment of the question of the financial fitness of Wirecom.[1]

The Commission's order pertaining to financial fitness states:

> In assessing the fitness, willingness and ability of competing applicants for a certificate of public convenience and necessity, among the most important factors to be considered is the financial strength of each applicant. FMUS witnesses have testified to the ability of FMUS to finance their proposed service from revenues, revenue bonding, other borrowing, or a combination of all three.
>
> Witness Rompa for Great Land sponsored evidence of a one million dollar line of credit from the First National Bank of Anchorage. This witness and the staff financial witness Milne also attested to Great Land's ability to obtain the equity portion of its proposed 60/40 debt/equity ratio with cash to be provided by its parent Wirecom.
>
> In our opinion both applicants possess the financial resources to implement their proposed service at Fort Wainwright.[2]

Wirecom proposed spending the sum of $1,900,000 for capital expenditures for Fort Wainwright by 1978. It also proposed to

---

1. At times the Commission treated Great Land Telephone as an entity separate from Wirecom. The evidence was clear, however, that Great Land is not a subsidiary or affiliate corporation of Wirecom, but simply an operating name.

2. *In re* Application of City of Fairbanks, U–76–62 Order No. 2 at 9–10 (May 5, 1977).

maintain a 60/40 debt/equity ratio, the equity to be internally generated by assets of Wirecom. It submitted a letter of credit from the First National Bank indicating a loan commitment of $1,000,000. However, the only balance sheet that was submitted was a balance sheet purporting to be that of Great Land, as a separate entity, listing total assets of $1,500. No balance sheets or income statements for Wirecom were submitted.

At the hearing the commission staff requested two years' annual balance sheets and income statements from Wirecom. Wirecom agreed to supply them to the staff, but requested that they not be divulged to Fairbanks or become part of the record, claiming that they were proprietary and that revealing them could place Wirecom at a competitive disadvantage in its telecommunications contracting business. Fairbanks objected and suggested as an alternative that the income statements and balance sheets could be revealed to certain representatives of Fairbanks under an order of confidentiality.

The Commission ruled that the information was proprietary and should be kept confidential and did not allow any representative of Fairbanks to see it. A Commission staff member reviewed the income statements and balance sheets and based on that review testified that Wirecom could meet its financial commitments and was financially fit. The information upon which this determination was based was never placed in the record.

Fairbanks claims that the Commission's handling of the information relating to Wirecom's financial fitness violated procedural due process.[3] We agree.

The standard of review of agency findings of fact is that they will be set aside if they are not supported by substantial evidence on the whole record.[4] Inherent in this standard is a requirement that the facts found be based on evidence in the record.[5] That requirement serves three purposes: First, it helps to ensure that the agency does not make decisions that have no adequate basis in fact; second, it gives opposing parties the opportunity to challenge the agency's reasoning process and the correctness of the decision; and third, it affords reviewing courts the opportunity to evaluate the decision.

In this case, Fairbanks had no way of knowing what the financial information consisted of, no opportunity to subject it to the tests of cross-examination or other means of verification, no opportunity to rebut it, and no opportunity to argue that the staff's conclusion did not logically follow from the information on which it was based. Likewise, neither this court nor the superior court can evaluate the Commission's conclusion without the underlying information. These fundamental defects amount to a failure of due process.

*Ohio Bell Telephone Company v. Public Utilities Commission of Ohio,* 301 U.S. 292, 57 S.Ct. 724, 81 L.Ed. 1093 (1937) is particularly relevant. The Ohio Commission had relied on data not in evidence in evaluating

**3.** Wirecom's argument that this point is waived because it was neither included in Fairbanks' Statement of Points on Appeal, nor briefed is factually wrong (see Statement of Points on Appeal, No. 4 and Fairbanks' Brief, at 27–41) as is its assertion that Fairbanks did not object to non-disclosure of the underlying records (Tr. 1149, 1151, 1153–54, 1163–64, 1169).

**4.** *Keiner v. City of Anchorage,* 378 P.2d 406, 411 (Alaska 1963).

**5.** The requirement is in part statutory. AS 42.05.191 provides:
*Format of orders.* Every formal order of the commission shall be based upon the facts of record. Every order entered pursuant to a

hearing shall state the commission's findings, the basis of its findings and conclusions, together with its decision. These orders shall be entered of record and a copy of them shall be served on all parties of record in the proceeding.
AS 44.62.570(b) states in part:
Inquiry in an appeal extends to the following questions:
(3) whether there was a prejudicial abuse of discretion. Abuse of discretion is established if . . . the findings are not supported by the evidence.

property owned by the telephone company for rate-making purposes. The telephone company was not given an opportunity to explain or rebut the data and claimed that because of this it had been deprived of a fair hearing in contravention of the requirements of the fourteenth amendment. The Court, in an opinion written by Mr. Justice Cardozo, agreed and made the following pertinent observations:

> From the standpoint of due process—the protection of the individual against arbitrary action—a deeper vice is this, that even now we do not know the particular or evidential facts of which the Commission took judicial notice and on which it rested its conclusion. Not only are the facts unknown; there is no way to find them out. When price lists or trade journals or even government reports are put in evidence upon a trial, the party against whom they are offered may see the evidence or hear it and parry its effect. Even if they are copied in the findings without preliminary proof, there is at least an opportunity in connection with a judicial review of the decision to challenge the deductions made from them. The opportunity is excluded here. The Commission, withholding from the record the evidential facts that it has gathered here and there, contents itself with saying that in gathering them it went to journals and tax lists, as if a judge were to tell us, "I looked at the statistics in the Library of Congress, and they teach me thus and so." This will never do if hearings and appeals are to be more than empty forms.

> .   .   . To put the problem more concretely: how was it possible for the appellate court to review the law and the facts and intelligently decide that the findings of the Commission were supported by the evidence when the evidence that it approved was unknown and unknowable?   .   .   . What the Supreme Court of Ohio did was to take the word of the Commission as to the outcome of a secret investigation, and let it go at that. "A hearing is not judicial, at least in any adequate sense, unless the evidence can be known."

> Regulatory commissions have been invested with broad powers within the sphere of duty assigned to them by law. Even in quasi-judicial proceedings their informed and expert judgment exacts and receives a proper deference from courts when it has been reached with due submission to constitutional restraints. .   .   . Indeed, much that they do within the realm of administrative discretion is exempt from supervision if those restraints have been obeyed. All the more insistent is the need, when power has been bestowed so freely, that the "inexorable safeguard" of a fair and open hearing be maintained in its integrity. The right to such a hearing is one of "the rudiments of fair play" assured to every litigant by the fourteenth amendment as a minimal requirement. [Citations omitted].

301 U.S. at 302–05, 57 S.Ct. at 729–731, 81 L.Ed. at 1100–02.

The Commission's ruling that the balance sheets and income statements of Wirecom need not be disclosed or made part of the record was based on AS 42.05.671 which provides:

> *Public disclosure of information.* Facts and information in the possession of the commission are public, and reports, files, books, accounts and papers of every nature in its possession except records which by regulation are designated to be of a nonpublic or privileged nature are open to public inspection at reasonable times. However, a person may make written objections to the public disclosure of information contained in an application, report or document filed under the provisions of this chapter or of information obtained by the commission under the provisions of this chapter, stating the grounds for the objection. When an objection is made, the commission shall order the information withheld from public disclosure if the information would adversely affect the interest of that person

and is not required in the interest of the public.[6]

■ The privilege reflected by this statute should be construed narrowly so that it does not conflict with the constitutional requirements of due process. The requirement of the statute that information not be withheld if "required in the interests of the public" will normally prevent a conflict with due process requirements. If a conflict nevertheless occurs, due process must control.

■ In this case no real showing was made by Wirecom that it would be competitively disadvantaged in its contracting business by disclosure of its income statements and balance sheets. It is not obvious how such harm might have come about, and no illustrations were offered. However, if a proper showing had been made, the Commission could have, consistent with the requirements of due process, imposed an order of confidentiality on Fairbanks' representatives, permitted cross-examination *in camera*, and sealed that portion of the record containing the privileged information.

■ One other point bears mentioning. The Commission's order contains as a sub-conclusion the statement that "on-going regulatory supervision is in the public interest" and that Wirecom's proposal was preferable to that of Fairbanks because Wirecom was subject to the Commission's jurisdiction while Fairbanks was not. The supe-rior court found that it was improper for the Commission to make this value judgment, but that the error did not warrant reversal because it played a relatively insignificant role in the ultimate decision. We agree with the superior court that the fact that Wirecom was subject to the Commission's jurisdiction while Fairbanks was not may not be regarded as a factor in Wirecom's favor. The legislature has determined that it is in the public interest to allow municipalities to operate public utilities free from Commission supervision,[7] and the Commission cannot validly ignore that legislative judgment. In view of our disposition of this case it is unnecessary to determine whether the Commission's error in this respect would, standing alone, require a remand.

The decision of the superior court is reversed and this case is remanded to the superior court with instructions to vacate the order of the Commission and remand the case to the Commission for a redetermination of the question of certification following a supplemental hearing with regard to the financial fitness of Wirecom.

6. The statute is implemented by 3 AAC 48.040 which provides in pertinent part:

> *Privileged Records and Information.* (a) All facts, information, reports, orders, memoranda, books, accounts, and papers of every nature in the possession of the commission are available for examination by the public except.
>
> .    .    .    .    .
>
> (9) any specifically designated information in an application, tariff filing, report or document which, for good cause shown, the commission may order withheld pursuant to written objection by the filing party:
>
> .    .    .    .    .
>
> (c) Privileged information will *not* be made public or furnished to any person except pursuant to a *subpoena duces tecum* or application to the commission stating specifically the material or information that is desired

and the reason it is desired. The commission may grant or deny requests in whole or in part.

7. AS 29.48.060 provides:

> *Public utilities rates.* The assembly acting for the area outside cities and the council acting for the area within a city may regulate, fix, establish and change, as it considers proper, the rates and charges imposed for utilities services given to the municipality or its inhabitants by a public service association, corporation, or individual not regulated under AS 42.05 and may regulate and provide what is a reasonable deposit for meters and security for service to be given, provided that interest be paid on the deposit. All rates, charges and regulations shall be reasonable and shall permit a fair and reasonable return on invested capital.