OCEANVIEW HOMEOWNERS ASSOCIATION, INC., Appellant,

v.

QUADRANT CONSTRUCTION AND ENGINEERING, Royal Krest Construction, Flying Crown Subdivision Addition No. 1 and Addition No. 2, Property Owners Association, Appellees.

No. 7183.

Supreme Court of Alaska.

March 23, 1984.

---

Robert A. Breeze, Anchorage, for appellant.

Kenneth D. Jensen, Jensen, Harris & Roth, Anchorage, and Bruce F. Sherman, Anchorage, for appellees Quadrant Const. and Engineering and Royal Krest Const. Co.

Peter A. Lekisch and Ann Waller Resch, Hoge & Lekisch, Anchorage, for appellees Flying Crown Subdivision Addition No. 2 and Addition No. 2, Property Owners Assn.

Before BURKE, C.J., RABINOWITZ, MATTHEWS and COMPTON, JJ., and SERDAHELY, Superior Court Judge.*

## OPINION

COMPTON, Justice.

This appeal arises out of a zoning dispute. Appellant Oceanview Homeowners Association, Inc. ("Oceanview") objects to the setting aside by the Zoning Board of Examiners and Appeals ("Board") of orders issued by the Zoning Enforcement Office of the Anchorage Department of Public Works ("Zoning Enforcement Office"). The Zoning Enforcement Office's orders restricted improvements to and the use of the Flying Crown airstrip, a private airstrip located in a residential area of Anchorage and used by about twenty airplanes. The only issues raised on appeal are (1) whether the Board committed procedural errors in deciding to revoke the orders; (2) whether there was substantial evidence to support the Board's decision; (3) whether the superior court erred in excluding certain items from the Record on Appeal; and (4) whether the superior court erred in awarding attorney's fees against Oceanview on appeal of the Board's decision. For the reasons set forth below, we hold that neither the Board nor the superior court erred on the first three issues, and we therefore affirm the superior court's decision as to those issues. We hold that the public interest exception to attorney's fees awards applies in this case, and we therefore reverse the superior court's award of attorney's fees against Oceanview.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The Flying Crown airstrip is bounded by and parallel to the Alaska Railroad right-of-way to the east and adjacent to developed and developing residential lots to the west. The airstrip appears on U.S. Geological Survey maps as far back as 1962 and was improved and expanded for use as a private facility during the 1960s. In 1965, John Graham purchased what is now the Flying Crown Subdivision, which included part of the airstrip. In 1970, Graham acquired the remainder of the airstrip as part of what is now Oceanview North Subdivision.

* Serdahely, Judge, sitting by assignment made pursuant to Article IV, Section 16 of the Constitution of Alaska.

When Graham purchased the properties, the area was not zoned for any particular use. However, in March of 1972, the Greater Anchorage Area Borough ("GAAB") zoned the area for single-family residences. At that time airstrips were permitted within these zones "if adequate approach and noise buffer areas are provided." GAAB Ordinance 21.05.050(B)(4)(C). As a use which pre-dated the imposition of zoning, the Flying Crown airstrip was "grandfathered in" as a conditional use under the local ordinance. Anchorage Municipal Code ("AMC") 21.55.110. A month before the zoning plan went into effect, Graham sold off the northern half of the airstrip and the land surrounding it, but retained the southern portion for development into what later became the Flying Crown Subdivision.

Appellees Flying Crown Subdivision Addition No. 1 and Addition No. 2 Property Owners Association ("Flying Crown") comprise a group of residents who live on developed lots near the southern half of the airstrip and use the airstrip as a base for their private airplanes. The members of Flying Crown own the southern half of the airstrip. Appellees Quadrant Construction and Engineering and Royal Krest Construction Company (both referred to here as "Royal Krest") own the northern half of the airstrip and the undeveloped lots around it in the Oceanview North Subdivision. Graham developed and sold the lots in the Flying Crown Subdivision with the understanding that the residents there would be able to use the airstrip.

Royal Krest wished to do the same, and in 1977 it applied to the Planning and Zoning Commission for permission to build taxiways leading into the Oceanview North Subdivision from the airstrip. This application was denied, and Royal Krest was required to restrict itself to those aviation activities which existed at the time the zoning plan was put into effect in 1972. *See Royal Krest Construction, Inc. v. Municipality of Anchorage,* No. 3 AN–78–7612 Civ. (3d Dist.Super.Ct., Feb. 25, 1980).

Late in 1980, the Zoning Enforcement Office received a number of complaints that Royal Krest was expanding the use of the airstrip by adding dirt to the runway and otherwise improving the access and facilities of the airstrip. These complaints also alleged that Flying Crown members were using the airstrip in a manner which violated zoning restrictions. In response to the complaints, the Zoning Enforcement Office issued three enforcement orders in November and December of 1980. A letter sent to Flying Crown demanded that the members of Flying Crown:

1. Cease using or allowing to be used Tract A–1 of Flying Crown for tie-downs, taxiing of airplanes or landings and takeoffs except for owners of those lots who were using the landing strip for that purpose at the time of rezoning in March of 1972 or their successors.

2. Cease making or causing to be made any improvements in the physical features of the landing strip without first applying for a Conditional Use permit from the Planning and Zoning Commission to make such improvements.

The order sent to Royal Krest was similar, demanding that the company:

1. Cease fill work on Tract A–3, Oceanview North #3 for the purpose of using it for tiedowns, parking of planes, or a landing strip;

2. Cease using or allowing the use of the streets in Oceanview North #3 and the paved portion of Lots 63 and 64 for taxiways;

3. Cease using or allowing the use of any portion of Tract A–3, Oceanview North #3 for parking, tying down or taxiing [of] airplanes.

A form letter sent to the owners of airplanes parked at the airstrip demanded that they stop using tracts A–1 or A–3 to tie down their planes. Royal Krest and Flying Crown appealed the enforcement of these orders to the Board.

The Board heard the arguments of the Appellees and the testimony of more than

twenty witnesses at two sessions on April 2 and April 8, 1981. Late in the evening of April 8, the Board voted on whether to uphold part one of the order issued to Flying Crown. The Board voted to leave part one in effect, and then adjourned. The next night, however, Board member Brust called for a reconsideration of the vote because he had misunderstood the motion he was voting on. Upon reconsideration, the Board revoked the entire order to Flying Crown. The Board also granted Royal Krest's appeal and made specific findings of fact for each item of both appeals.

Oceanview appealed the Board's decision to superior court. As part of its Designation of Record on Appeal, Oceanview included the entire record, decision and judgment in the earlier case of *Royal Krest Construction, Inc.* The superior court granted Royal Krest's motion to strike these items from the record. A motion for reconsideration of this order was denied.

The superior court affirmed the Board's decision without an opinion and awarded costs and attorney's fees to Royal Krest and Flying Crown. Oceanview appeals this decision.

## II. PROCEDURAL ERROR IN BOARD'S RECONSIDERA-TION VOTE

Oceanview contends that by reconsidering a vote already taken, the Board violated regulatory requirements governing reconsideration. Both Flying Crown and Royal Krest argue that Oceanview waived its right to raise the issue of procedural defects at the Board hearing by failing to include the issue in its points on appeal to the superior court.

In general, an issue omitted from an appellant's statement of points on appeal will not be considered by this court. Alaska R.App.P. 210(e); *Jeffries v. Glacier State Telephone Co.*, 604 P.2d 4, 11 (Alaska 1979). There are exceptions to this rule. In *Miller v. City of Fairbanks*, 509 P.2d 826, 829 (Alaska 1973), we considered an issue not previously raised, but only after

noting that the appellant was without counsel and that the issue was one recognized by both parties. In *Mullen v. Christiansen*, 642 P.2d 1345, 1350 (Alaska 1982), we excused the omission of an issue from the points on appeal, but only because the issue was raised at the trial level and opposing counsel was apprised of it. Neither of these mitigating circumstances are present in this case; therefore, we will not consider the issue of procedural error.

## III. THE BOARD DECISION

Oceanview contends that the Board's decision to revoke the enforcement orders issued by the Zoning Enforcement Office was erroneous. The standard for judicial review of Board decisions is set forth in AMC 21.30.190, which states: "The findings of ... the Zoning Board of Examiners and Appeals ... shall not be reversed if, in the light of the whole record, they are supported by substantial evidence." *See also City of Fairbanks v. Alaska Public Utilities Commission*, 611 P.2d 493, 495 (Alaska 1980); *Galt v. Stanton*, 591 P.2d 960, 962–963 (Alaska 1979); *Keiner v. City of Anchorage*, 378 P.2d 406, 411 (Alaska 1963) (applicable standard for reviewing agency findings).

The Board was called upon to decide whether the activities addressed by the Zoning Enforcement Office orders violate the zoning laws. In concluding that they did not, the Board found that the Flying Crown airstrip was used as a landing area for airplanes prior to zoning, and that the use has been continuous since 1972.

The Board also found that the airstrip use had intensified, in that greater numbers of airplanes were using the airstrip, but found no evidence to show that the airstrip had been expanded. This finding was based on an application of the test used in *Town of Bridgewater v. Chuckran*, 351 Mass. 20, 217 N.E.2d 726 (1966). The *Chuckran* test consists of three questions: (1) is the current use of the same nature and character as the pre-zoning use? (2) is there a difference in the quality, character

and degree of the use? (3) is there a difference in the kind of effect the use now has on the neighborhood? *Id.* at 727–28. The Board concluded that (1) there was no significant difference in character and purpose between the use of the airstrip in 1972 and at present; (2) there had been no significant physical changes in the airstrip since 1972; and (3) there was no significant difference in impact on the surrounding property owners of the current use of the landing strip over that which existed in 1972. Since the Anchorage Zoning Laws prohibit only expansion or extension, *see, e.g.*, AMC 21.55.010, the Board concluded that intensification was permissible.[1] The Board reasoned that in view of this continuous pre-zoning use, and the expectations created in airplane owners who moved into Flying Crown after 1972, more harm would result from halting the airstrip use than from permitting it to continue.

 Our review of the record indicates that the Board's findings are supported by substantial evidence. The Board based its findings on evidence presented in two nights of hearings. A surveyor testified that he staked and graded the property in 1963 in order to make it suitable for use as an airstrip. Long-time residents testified before the Board that the airstrip had been in use since the 1960s. Other evidence, offered by affidavit, showed that at least six planes regularly used the airstrip between 1970 and 1975. There was also testimony from airplane owners who lived in the Flying Crown subdivision regarding the investments they had made in airstrip improvements, and regarding their expectations upon purchasing lots in the subdivision that they would be able to use the airstrip. Although there was some evidence to contradict the Board's findings, the weight of the testimony supports the Board's decision. In any event, it is not

our function to evaluate the strength or weakness of evidence presented to administrative agencies. As we stated in *Anderson v. Employers Liability Assurance Corp.*, 498 P.2d 288, 290 (Alaska 1972): "It is not important that the particular situation before the board is subject to more than one inference. What matters is whether the determination of the board is supported by substantial evidence on the whole record." (footnote omitted).

Our role in reviewing administrative agency decisions is limited. Within the confines of this role, we hold that there was substantial evidence to support the Board's decision to set aside the enforcement orders.[2]

## IV. LIMITATION OF RECORD ON APPEAL

Oceanview argues that the superior court erred in excluding from the record on appeal the proceedings and decision in *Royal Krest Construction, Inc. v. Municipality of Anchorage*, No. 3 AN 78–7612 Civ. (3d Dist.Super.Ct., Feb. 25, 1980). In that case, Royal Krest asked for and was denied permission to expand the Flying Crown airstrip by extending taxiways from the airstrip into the Oceanview North Subdivision. The superior court held that the Board's finding that expansion and development of the Flying Crown airstrip would create safety problems was reasonably supported by the record. Oceanview contends that because it supplied the record of *Royal Krest* to the Board, the case should have been included in the record on appeal to the superior court.

 While we agree that any matter submitted to an administrative agency involved in an adjudicative proceeding may be included in the record on appeal, we find that the superior court's error was harmless. On appeal from an administrative

---

1. As used by the Board "intensification" referred to increased use of the airstrip. The Board found that no geographical expansion had taken place since 1972.

2. The only contested orders are paragraph 1 of the letter to Flying Crown, paragraph 3 of the

letter to Royal Krest and the form letter sent to owners of airplanes parked at the airstrip. (*See supra*, at p. 5–6). At the hearing before the Board the Municipal Attorney conceded that the other orders need not be enforced since there was no evidence that they had been violated.

appeal to the superior court we review the merits of the administrative determination directly, except to the extent that supplemental evidentiary proceedings have taken place in the superior court. *National Bank of Alaska v. State, Department of Revenue*, 642 P.2d 811, 816 (Alaska 1982). We have reviewed the excluded material in light of appellant's substantive contentions and find that it has no bearing on them.

## V. ATTORNEY'S FEES

The superior court awarded partial attorney's fees to Flying Crown and Royal Krest pursuant to Appellate Rule 508(e). Oceanview contends that the public interest exception to an award of fees to the prevailing party applies. We agree.

In opposition to motions for costs and attorney's fees filed by Royal Krest and Flying Crown, Oceanview claimed public interest litigant status. The trial court made no specific finding that the case was not public interest litigation. *Cf. Moses v. McGarvey*, 614 P.2d 1363, 1369 (Alaska 1980) (trial court awarded full attorney's fees, but failed to make a finding that the case was a public interest law suit). However, implicit in the trial court's award of attorney's fees against Oceanview is the finding that this is not public interest litigation.

In *Kenai Lumber Co. v. LeResche*, 646 P.2d 215 (Alaska 1982) we set forth four criteria for identifying public interest suits: (1) whether the case is designed to effectuate strong public policies; (2) whether, if the plaintiff succeeds, numerous people will benefit from the lawsuit; (3) whether only a private party could be expected to bring the suit; and (4) whether the litigant claiming public interest status would lack sufficient economic incentive to bring the lawsuit if it did not involve issues of general importance. 646 P.2d at 222–223. We conclude that Oceanview's appeal was designed to vindicate a strong public policy in effectuating zoning ordinances, that numerous people in the area would have benefited had it succeeded, and that only a private party could have been expected to bring the appeal. Oceanview's consistent emphasis on health and safety to the virtual exclusion of economic concerns indicates that it would not have had "sufficient economic incentive to bring the lawsuit even if it involved only narrow issues lacking general importance."[3] *Kenai Lumber Co.*, 646 P.2d at 223. Thus, under the *Kenai Lumber Co.* test, Oceanview is a public interest litigant and "should not be burdened with payment of a part of [its] opponent's attorney's fees under Civil Rule 82." *Id.* at 222. The trial court's implicit finding to the contrary is clearly erroneous. Civil Rule 52(a).

This court has consistently held that it is error "to award attorney's fees *against* a losing party who has in good faith raised a question of genuine public interest before the courts." *Anchorage v. McCabe*, 568 P.2d 986, 989 (Alaska 1977), quoting *Gilbert v. State*, 526 P.2d 1131, 1136 (Alaska 1974). Oceanview has raised a question of genuine public interest, and accordingly the superior court erred in awarding attorney's fees against it.

## CONCLUSION

Oceanview raises both procedural and substantive issues on appeal. The alleged procedural defects involve the exclusion of the *Royal Krest* record and the propriety of the Board's reconsideration of its own vote. As discussed above, the exclusion of the record was harmless error, and the reconsideration vote issue was not raised on appeal or at the hearing level. The substantive objections concern the Board's decision to revoke the enforcement orders.

---

**3.** In response to Oceanview's claim that it qualified as a public interest litigant, Royal Krest asserted that:

Appellant had standing to commence this appeal because it claimed:

"... the immediate effect of the decision is to deny or diminish the value of real property owned or leased by appellant. Anch.Mun. Code 21.30.180(E)"

It therefore concluded that Oceanview's claim was not supported by the law, citing *Kenai Lumber Co. v. LeResche*, 646 P.2d 215 (Alaska 1982). This is the only reference to economic concerns to be found in the record. "Standing" is not synonymous with "economic incentive."

We are convinced that there was no error by the Board because there was substantial evidence for its findings. Accordingly, we affirm the superior court's affirmance of the Board's decision. However, because Oceanview's appeal to the superior court raised issues of public interest, we reverse the court's award of attorney's fees to Flying Crown and Royal Krest.

AFFIRMED in part and REVERSED in part.

BURKE, Chief Justice, with whom SER-DAHELY, Judge, joins, dissenting in part.

I disagree with the court's resolution of the issue of attorney's fees. In my view it seems clear that the plaintiff's private interest was sufficient to inspire the lawsuit. I cannot accept the "public interest" characterization adopted by the court, and therefore I would affirm the trial court's award of partial attorney's fees to Flying Crown and Royal Crest.