**EYAK TRADITIONAL ELDERS COUN-
CIL, Marie Smith Jones, Glen E. Lan-
kard, Jr., Pamela Jean Smith, Faye Pahl
and Rosie Sophie Starek, Appellants,**

v.

**SHERSTONE, INC., Eyak Corporation
and Sound Development, Inc.,
Appellees.**

No. S–5844.

Supreme Court of Alaska.

Oct. 20, 1995.

Peter Van Tuyn, Trustees for Alaska, An-
chorage, for appellants.

James D. Linxwiler and Gregory G. Silvey,
Guess & Rudd, Anchorage, for appellees.

Before MOORE, C.J., RABINOWITZ, MATTHEWS, COMPTON and EASTAUGH, JJ.

## OPINION

RABINOWITZ, Justice.

The Eyak Traditional Elders Council and five individual Eyak Natives (collectively the "Council") sought unsuccessfully to prevent Sherstone, Inc. from clearcut harvesting a 50–acre tract of timber believed to be the location of an historic Eyak village and burial ground. Following the Council's motion to voluntarily dismiss pursuant to Civil Rule 41(a)(2), the superior court dismissed the case with prejudice and awarded partial attorney's fees and costs to appellees Sherstone, Inc., the Eyak Corporation, and Sound Development, Inc. (collectively "Sherstone"). The Council appeals this award of attorney's fees arguing that, as a public interest litigant, it is immune from such an award. We agree and therefore reverse.

## I.  FACTS AND PROCEEDINGS

The Eyak Traditional Elders Council formed in 1991 to preserve the ancestral lands of the Eyaks.[1] Because of the Eyak population's recent decline,[2] the Council has sought to take active steps to protect the tribe's remaining heritage, including the preservation of land upon which traditional Eyak cultural activities took place.

In August 1992, a timber subsidiary of the Eyak Corporation,[3] Sherstone, Inc., submitted notification to the Alaska Department of Natural Resources (DNR) detailing its plans to clearcut land at "Eyak River East" near Cordova. The 50–acre site is situated on property privately held by the Eyak Corporation.

Many Eyak Natives, including members of the Council, firmly believe that their ancestral village sites and burial grounds are locat-ed along the east bank of the Eyak River. Additionally, the theory that the logging zone is culturally rich continues to receive support from at least one academic source. However, the Eyak Corporation and others had previously surveyed the property to be clearcut and found no evidence of significant cultural artifacts or grave sites in the area.

In September 1992, the Council and five individual Eyak Natives filed suit against DNR, the Eyak Corporation, and certain subsidiaries of Eyak, seeking to halt all logging operations at Eyak River East pending a thorough survey to assess its value as an archeological site. The proposed logging was sought to be enjoined on the following grounds: (1) Sherstone's clearcut logging of the 50–acre site would violate the Alaska Historic Preservation Act (AHPA), AS 41.35.010–.240, if it was carried out without a permit under that statute; (2) DNR's authorization of the clearcut without a permit or survey also violated the AHPA, since the State has a nondiscretionary duty to enforce the statute; and (3) by authorizing the decimation of their sacred ancestral lands, the State infringed on the Eyaks' freedom of religion as guaranteed under article I, section 4 of the Alaska Constitution. In addition to injunctive relief, the Council later amended its complaint adding requests for a $100,000 civil penalty against Sherstone per violation of the AHPA and separate claims for $100,000 in damages against both Sherstone and the State.

The superior court initially ruled favorably for the Council, issuing a temporary restraining order suspending the logging at Eyak River East. After a full hearing, however, the court denied the Council's motion for a preliminary injunction. The superior court noted that although "it is possible that there may be culturally important sites, artifacts or grave sites" at the logging site, the Council failed to "establish[ ] a probability that such sites or artifacts exist." Following this rul-

---

1. According to appellees, the Council "is not an officially recognized tribal entity."

2. By current estimates, there are approximately 100 members of the Eyak tribe, and there is only one full-blooded Eyak Native alive today.

3. Although the five individual appellants own shares in the Eyak Corporation, which is the Alaska Native Claims Settlement Act village corporation for Cordova, Eyak Natives are not in control. Eyak Natives own only 6% of the shares in the Eyak Corporation, and Aleuts occupy all nine seats on the board of directors.

ing, Sherstone filed its answer to the complaint and moved for summary judgment.

Despite the Council's efforts to settle the case, Sherstone completed its logging operations on the Eyak River East site. The Council explains that because this clearcut mooted the focus of its suit, it chose to move for voluntary dismissal pursuant to Civil Rule 41(a)(2).[4] Sherstone opposed, seeking a disposition on the merits.

The superior court granted the motion to dismiss. Because the State had not yet filed an answer, dismissal as to DNR was automatic under Civil Rule 41(a)(1).[5] As to the remaining defendants, the superior court granted the Council's motion for dismissal "with prejudice subject to the award of such costs and attorney's fees ... as may be appropriate under Rule 41(a)(2) as a condition of such dismissal."

In a subsequent motion, Sherstone requested an award of 80% of its actual attorney's fees and full costs. The Council opposed, arguing that because it had litigated genuine issues of public interest, it was immune from attorney's fees or cost awards as a public interest litigant under Alaska law. Though it made no explicit finding with regard to the Council's status as a public interest litigant,[6] the superior court entered an order awarding Sherstone attorney's fees in

the amount of $10,000 (21% of the actual fees).

The Council now appeals this fee award.

## II. DISCUSSION

### A. The Trial Court Must Consider the Public Interest Status of a Party when Conditioning a Rule 41(a)(2) Voluntary Dismissal on Payment of Partial Attorney's Fees and Costs

■ It is a well-established principle that when considering an award of attorney's fees pursuant to Alaska Civil Rule 82, "it is an abuse of discretion to award attorneys' fees against a losing party who has in good faith raised a question of genuine public interest before the courts." *Gilbert v. State,* 526 P.2d 1131, 1136 (Alaska 1974); *see also Oceanview Homeowners Ass'n, Inc. v. Quadrant Constr. & Eng'g,* 680 P.2d 793, 799 (Alaska 1984); *Southeast Alaska Conservation Council, Inc. v. State,* 665 P.2d 544, 552–54 (Alaska 1983). Exempting public interest litigants from the burden of fee shifting awards represents a basic policy decision to "encourage plaintiffs to bring issues of public interest to the courts." *Anchorage v. McCabe,* 568 P.2d 986, 990 (Alaska 1977). If public interest litigants risked responsibility for their opponents' fees, potential "private attorneys general" could be seriously deterred from bring-

---

4. Civil Rule 41(a)(2) provides:

    *By Order of Court.* Except as provided in paragraph (1) of this subdivision of this rule, an action shall not be dismissed at the plaintiff's instance save upon order of the court and upon such terms and conditions as the court deems proper. If a counterclaim has been pleaded by a defendant prior to the service upon the defendant of the plaintiff's motion to dismiss, the action shall not be dismissed against the defendant's objection unless the counterclaim can remain pending for independent adjudication by the court. Unless otherwise specified in the order, a dismissal under this paragraph is without prejudice.

5. Civil Rule 41(a)(1) provides:

    *By Plaintiff—By Stipulation.* Subject to the provisions of Rule 23(c), of Rule 66 and of any statute of the state, an action may be dismissed by the plaintiff without an order of the court: [a] by filing a notice of dismissal at any time before service by the adverse party of an answer or of a motion for summary judgment,

whichever first occurs; or [b] by filing a stipulation of dismissal signed by all parties who have appeared in the action. Unless otherwise stated in the notice of dismissal or stipulation, the dismissal is without prejudice, except that a notice of dismissal operates as an adjudication upon the merits when filed by a plaintiff who has once dismissed in any court of this state, or of any other state, or in any court of the United States, an action based on or including the same claim.

6. Although the superior court did not expressly address the issue of the Council's public interest litigant status, because this issue was raised by the Council before the superior court, it is implicit that the superior court considered and rejected the Council's argument that it should be accorded public interest litigant status. *Oceanview Homeowners Ass'n, Inc. v. Quadrant Constr. & Eng'g,* 680 P.2d 793, 799 (Alaska 1984). We are therefore free to review this determination for an abuse of discretion. *Municipality of Anchorage v. Citizens for Representative Governance,* 880 P.2d 1058, 1061 (Alaska 1994).

ing beneficial litigation. *Id.* (citing *Gilbert,* 526 P.2d at 1136).

Here attorney's fees and costs were awarded following the Council's voluntary dismissal of its claims against Sherstone and the other defendants. Alaska Civil Rule 41(a)(2) provides that "an action shall not be dismissed at the plaintiff's instance save upon order of the court and upon such terms and conditions as the court deems proper." [7] In *Dome Laboratories v. Farrell,* 599 P.2d 152, 160 (Alaska 1979), we determined that this rule provides an independent basis for an award of attorney's fees. Relying on *Dome Laboratories* and other cases construing this rule, Sherstone argues that the superior court's decision to condition voluntary dismissal on the payment of costs and attorney's fees was within the superior court's broad discretion. *Id.* at 159–60.

■ We conclude, however, that the policies underlying the public interest exception to Civil Rule 82 attorney's fees are no less compelling when the plaintiff agrees to voluntarily dismiss its action. Thus, if the Council qualifies as a public interest litigant, the superior court's decision to condition voluntary dismissal on the payment of partial attorney's fees and costs constitutes an abuse of discretion.

## B. *The Council Qualifies as a Public Interest Litigant*

■ In determining whether a party has litigated genuine issues of public interest, a court must evaluate the facts on a case-by-case basis. *Anchorage Daily News v. Anchorage Sch. Dist.,* 803 P.2d 402, 404 (Alaska 1990). This court has identified four factors that bear on this inquiry:

(1) Is the case designed to effectuate strong public policies?

(2) If the plaintiff succeeds will numerous people receive benefits from the lawsuit?

(3) Can only a private party have been expected to bring the suit?

(4) Would the purported public interest litigant have sufficient economic incentive to file suit even if the action involved only narrow issues lacking general importance?

*Id.* at 404.

### 1. *Public Policies Effectuated*

First, Alaska courts apply the public interest exception only in cases where the plaintiff seeks to "effectuate strong public policies." *Id.* The Council argues that each of its three causes of action were designed to protect important statutory and constitutional interests.[8]

Two of the Council's claims were based on the Alaska Historic Preservation Act (AHPA). AS 41.35.010–.240. The Act is designed to preserve Alaska's cultural legacy by protecting historical sites and artifacts:

It is *the policy of the state* to preserve and protect the historic, prehistoric, and archeological resources of Alaska from loss, desecration, and destruction so that the scientific, historic, and cultural heritage embodied in these resources may pass undiminished to future generations. To this end, the legislature finds and declares that *the historic, prehistoric, and archeological resources of the state are properly the subject of concerted and coordinated efforts exercised on behalf of the general welfare of the public in order that these resources may be located, preserved, studied, exhibited, and evaluated.*

AS 41.35.010 (emphasis added). The Act furthers this policy by granting the governor broad powers to designate state monuments or historic sites on public lands, AS 41.35.030, and permitting DNR to place restrictions on private property in danger of destruction or to acquire it by eminent domain. AS 41.35.060(b). The Act also makes it unlawful to destroy an historic resource of the state without a permit or to destroy a gravesite

---

**7.** See note 4 *supra* for the full text of Rule 41(a)(2).

**8.** Although only one cause of action was filed against Sherstone directly, appellees contested all three. Because Sherstone moved for attor-

ney's fees based on time spent responding to each claim, it is appropriate to consider the public interest nature of all claims filed against Sherstone and DNR.

even if it appears abandoned or lost. AS 41.35.200(a), (c). The Council contended that because Sherstone was proceeding to clear-cut Eyak River East without a permit under the AHPA, both Sherstone and DNR were in violation of the requirements of the statute.

■ The Council's third claim was based on the Eyak Natives' freedom of religion as guaranteed by article I, section 4 of the Alaska Constitution. In the Council's view, DNR's condonation of the clearcut on lands the Eyak Natives consider sacred seriously impeded their ability to practice their religion. In arguing that this claim effectuates a strong public policy, the Council relies on *Frank v. State*, 604 P.2d 1068, 1070 (Alaska 1979), for its holding that "[n]o value has a higher place in our constitutional system of government than that of religious freedom." [9]

We have accorded public interest status to a variety of claims that sought to advance strong statutory and constitutional interests. In *Alaska Survival v. State, Department of Natural Resources*, 723 P.2d 1281, 1283 (Alaska 1986), this court approved public interest status for a group of local residents seeking to halt DNR's disposal of thirty-two agricultural homesteads via a lottery. Plaintiffs claimed that DNR's actions would threaten their subsistence lifestyle, that the agency did not follow mandated procedures, and that the decision was not in the best interests of the state (a statutory requirement). *Id.* at 1284–85. There we acknowledged that ensuring that the agency follows statutes and proper procedure in homestead disposals represents an important effectuation of public policy. *See id.* at 1292. Simi-larly, in this case, the Council sought to compel DNR to abide by statutory mandates pertaining to the use of land.

In *Southeast Alaska Conservation Council*, we reversed a $25,000 attorney's fee award that the trial court had entered against a conservation group. 665 P.2d at 552–53. The group mounted a challenge against the Commissioner of Natural Resources and a lumber company, seeking declaratory and injunctive relief with regards to a timber sale contract. The group unsuccessfully contended that the timber sale violated state constitutional and statutory requirements that timber be harvested on a sustained yield basis. *Id.* at 548. Nevertheless, we held it was an abuse of discretion to award attorney's fees against the plaintiff. *Id.* at 554.[10]

Thus, we are of the view that the policies the Council sought to advance in this case are analogous to the type of concerns that we have considered sufficient in the past. In seeking to halt the destruction of land they believed was the site of their sacred ancestral villages and burial sites, the Council members chose to litigate issues of deep personal concern. However, in electing to pursue their claims under the auspices of the AHPA and free exercise clause, the Council framed its entire case in furtherance of statutory and constitutional policies that concern the public as a whole. Based upon the clear language of the AHPA, and our recognition of the fundamental importance of the right to free exercise of religion, we conclude that the

9. Sherstone does not deny that the preservation of culture and the freedom to practice one's religion are two significant policy concerns. Rather, Sherstone looks to what it perceives as the Council's underlying motivation in bringing this suit. According to Sherstone, rather than seeking to effectuate strong public policies, the Council was desperately searching for a way to halt the clearcut at Eyak River East because it is "simply philosophically opposed to Eyak's logging operations conducted on its own lands."

In addressing the first factor of our public interest litigant test, so long as the claims themselves would further strong public policies, we conclude that the plaintiff's motivations are irrelevant. Further, within the context of the test as a whole, the plaintiff's motivations are only rele-vant to the extent that the plaintiff had sufficient economic motive to bring suit. *See Municipality of Anchorage*, 880 P.2d at 1063. This concern is addressed in the final prong of the public interest litigant test.

10. *See also Johnson v. Tait*, 774 P.2d 185, 190 (Alaska 1989) (suit to enjoin the arguable infringement of free speech effectuates strong public policies); *Oceanview Homeowners Ass'n*, 680 P.2d at 799 ("Oceanview's appeal was designed to vindicate a strong public policy in effectuating zoning ordinances"); *cf. Loeb v. Rasmussen*, 822 P.2d 914, 921 n. 18 (Alaska 1991) ("[T]he case was a simple negligence action against an alleged tortfeasor. There is no indication that the estate filed suit because they believed there was a constitutional or statutory policy violated.").

Council's claims were designed to effectuate "strong public policies."

## 2. *Widespread Benefits*

The second factor we must consider in assessing whether a party qualifies as a public interest litigant is whether "numerous people" would have received "benefits from the lawsuit." *Anchorage Daily News,* 803 P.2d at 404. Sherstone argues that the plaintiffs here do not speak for the public; rather, the Council is "an extremely small group of political dissidents ... seeking to have its philosophical opposition to logging satisfied at the expense of everyone else." Sherstone points out that the logging operation employed many people in the Cordova area who would have directly suffered had the Council prevailed below.

In any case purported to effectuate public policy, some people will have contrary interests. This fact has not been held to disqualify a litigant from public interest status. *See, e.g., Thomas,* 611 P.2d at 538–40 (group attacking the constitutionality of an initiative enacted by Alaska voters was a public interest litigant); *McCabe,* 568 P.2d at 988 (suit seeking to halt construction of two eleven-story highrises concerned public interest).

Alaska's rich cultural diversity is one of its greatest resources. As evidenced by the enactment of the AHPA, the legislature has determined that all Alaskans are harmed when the historical and cultural traditions of one of Alaska's native peoples are relegated to a museum wall. Conversely, we all benefit when "the scientific, historic, and cultural heritage embodied in these resources may pass undiminished to future generations." AS 41.35.010. Because the Council sought to effectuate public policies that are intended to benefit all Alaskans, we conclude that had the Council been successful on the merits, "numerous people" would have received benefits.

## 3. *Enforcement by Private Party*

The third factor bearing on the public interest status of a party requires the court to ask whether "only a private party [could] have been expected to bring the suit." *An-*

*chorage Daily News,* 803 P.2d at 404. Although DNR had the statutory authority pursuant to the AHPA to either condemn the disputed property or otherwise limit Sherstone's logging operation on the disputed property, it is evident that in light of the facts presented, no such action would have been taken.

In *Southeast Alaska Conservation Council* we held that the existence of governmental authority to act was not determinative of this prong of the public interest litigant test. 665 P.2d at 554. We reasoned that although it is possible for a public entity to challenge the legality of a timber operation, "[s]ince the [timber] contract was between the Commissioner of the Department of Natural Resources, a state entity, and a private lumber company, no public entity could have been expected to bring this suit. The responsibility of necessity fell upon a private entity...." *Id.*

Similarly, in this case the Council recognized that by condoning Sherstone's plans to clearcut Eyak River East, DNR, the agency responsible for enforcing the AHPA, would not act to enforce its provisions. The Council chose to file suit against Sherstone itself for AHPA violations, and against the State to compel DNR to enforce the AHPA against Sherstone.[11] In short, because DNR was an active participant in the alleged statutory violation, the burden of enforcement fell upon a private party.

## 4. *Insufficient Economic Incentive*

The final factor bearing on a plaintiff's status as a public interest litigant concerns whether the party would have had "sufficient economic motive to file suit even if the action involved only narrow issues lacking general importance." *Anchorage Daily News,* 803 P.2d at 404. If a party possesses a sufficient economic incentive to sue, there is less need to fear that the potential burden of an attorney's fee award would deter the plaintiff from pursuing beneficial litigation. *See, e.g., Gold Bondholders Protective Council v. Atchison, T. & S.F. Ry.,* 658 P.2d 776, 778 (Alaska 1983); *Kenai Lumber Co. v. Le-Resche,* 646 P.2d 215, 223 (Alaska 1982). In

---

11. We additionally note that the Council's claim against the State for violation of the Alaska Con-

stitution could only have been brought by a private entity.

making this assessment, the court must review "specific facts about the character of the professed public interest litigant and the nature of that litigant's real financial stake in the lawsuit." *Citizens Coalition for Tort Reform, Inc. v. McAlpine,* 810 P.2d 162, 171 (Alaska 1991).

With regard to the subject matter of the Council's action, there is no evidence in the record indicating that the individual Eyak Natives or the Council derived economic benefits from the land in question. Although the Eyaks did engage in fishing and berry-picking at Eyak River East, in *Alaska Survival,* we held that a group partially motivated by a threat to its subsistence lifestyle did not have sufficient economic incentive to sue. "[A] more substantial financial interest is required...." 723 P.2d at 1292.

Sherstone argues, however, that the Council sought not only injunctive relief, but also compensatory damages—$100,000 for each cause of action from both the State and Sherstone. Sherstone contends that this claim for damages gave the Council incentive to sue and therefore bars its classification as a public interest litigant. Although we cannot say that the amount of damages sought by the Council was insubstantial, we have previously held that the fact that a litigant seeks monetary relief is not conclusive. *See Girves v. Kenai Peninsula Borough,* 536 P.2d 1221, 1227 (Alaska 1975). Instead, the court should also look to the facts of the case to determine the litigant's primary motivation for filing the suit. *See Abbott v. Kodiak Island Borough Assembly,* 899 P.2d 922, 924–25 (Alaska 1995).

Having done so, we conclude that economic incentives were simply not at the heart of the Council's motive to litigate. Throughout the present proceedings, the Council has consistently emphasized its over-arching mission of historical and cultural protection of its ancestral lands. For example, during her testimony, the chief of the Council discussed the high inherent value the Eyaks placed on the land: "All the money ... that is being made in Cordova will never mean as much as our historical sites. Our burial sites. Money means nothing compared to that." Additionally, we note that once the Council's efforts to secure injunctive relief became impossible, it abandoned all other peripheral consider-

ations, including its claims for damages and its efforts to have civil penalties entered against Sherstone. This strongly indicates that the Council's true intentions were to protect its cultural heritage rather than seek any financial windfall.

We therefore hold that the superior court abused its discretion in failing to rule that the Council was a public interest litigant.

### C. The Council Litigated its Claim in Good Faith

When this court first held that a court must not award attorney's fees against a public interest litigant, we stated: "[I]t is an abuse of discretion to award attorneys' fees against a losing party *who has in good faith* raised a question of genuine public interest before the courts." *Gilbert,* 526 P.2d at 1136 (emphasis added). Sherstone contends that even if the Council qualifies as a public interest litigant, the Council lacked good faith factual and legal bases upon which to sue, and therefore may be assessed attorney's fees as the losing party.

Sherstone first points out that the Council failed to provide any reliable evidence that the Eyaks' ancestral village and burial sites were actually located at the clearcut site. This argument is unpersuasive. Contrary to Sherstone's assertions, the plaintiffs did not need to show that there were actual artifacts or gravesites present at Eyak River East in order to have a good faith basis to believe it was so. The Council relied on information passed down through oral history and on the opinions of an academic who had studied the tribe. Additionally, we note that the superior court made no finding that the Council had proceeded with an improper purpose or that its allegations did not have a reasonable grounding in fact. Rather, the superior court remarked that the Council succeeded in showing that it is "possible that there may be culturally important sites, artifacts, or grave sites in the area which has largely now been logged."

Sherstone also argues that the Council raised frivolous legal claims. Sherstone explains that the AHPA does not contain an express private right of action, and no court has ever ruled that it contains an implied right of action allowing a private person to enjoin a private landowner's use of its own

lands. Although we do not hold here that the AHPA gives rise to a private right of action, we do think that a good faith argument can be made that such a private right of action can be implied. The Council advances a variety of arguments here supporting its view that the Alaska Legislature did not intend public agents to be the exclusive enforcement authority under the statute. Moreover, in the federal context, courts have found an implied private right of action under the National Historic Preservation Act (NHPA), 16 U.S.C. § 470 (1988), a statute with a similar purpose to the AHPA. *See, e.g., Aluli v. Brown,* 437 F.Supp. 602, 609 (D.Haw.1977) (although the NHPA does not "expressly grant[ ] a private right of action, such action can be said to be clearly implied since it is necessary to effectuate the purpose of ... the act"), *rev'd on other grounds,* 602 F.2d 876 (9th Cir.1979).

We therefore conclude that neither the Council's factual assertions nor its legal arguments were so devoid of merit as to warrant a conclusion that it litigated its claims in bad faith.

## III. *CONCLUSION*

The superior court's ruling that the Council was not a public interest litigant is REVERSED. The Council qualified as a public interest litigant and its suit against Sherstone was brought in good faith. We further hold that it was an abuse of the superior court's discretion to condition voluntary dismissal on the payment of attorney's fees by a public interest litigant. Therefore, we VACATE the superior court's order awarding attorney's fees against the Council.

MOORE, Chief Justice, with whom, EASTAUGH, Justice, joins, dissenting.

In reversing the award of attorney's fees to Sherstone, the majority treads upon a function that we have traditionally reserved for the discretion of the superior court. After review of the record, I am convinced that this case presents at least a "close call." As such, I would affirm the fee award as a proper exercise of the trial court's discretion.

The majority correctly observes that determining whether a party qualifies as a public interest litigant is always a fact-specific endeavor. *See, e.g., Anchorage Daily News v. Anchorage Sch. Dist.,* 803 P.2d 402, 403–04 (Alaska 1990). Although we have identified four factors to assist the trial court in evaluating whether a party has litigated a matter of genuine public interest, *id.* at 404, we have held on numerous occasions that a trial court's application of these factors, and thus its ultimate decision on the public interest status of a party, is entitled to abuse of discretion review. *Stein v. Kelso,* 846 P.2d 123, 127 (Alaska 1993); *Anchorage Daily News,* 803 P.2d at 404 n. 2; *Citizens for the Preservation of Kenai River, Inc. v. Sheffield,* 758 P.2d 624, 626 (Alaska 1988). Significantly, we have never applied a more stringent standard of review in public interest fee cases than we have when reviewing challenges to traditional Alaska Civil Rule 82 attorney's fee awards. *See, e.g., Adoption of V.M.C.,* 528 P.2d 788, 795 (Alaska 1974) (court will not disturb Rule 82 fee award unless there has been a "clear abuse of discretion ... being established only where it appears that the court's determination is manifestly unreasonable").

I am not convinced that the superior court abused its discretion by denying the Council's request for public interest litigant status. The majority painstakingly explains how the Council's claims satisfy each of the four factors which we have deemed relevant in the past. However, with the possible exception of the first factor—that the Council's claims themselves were designed to advance strong public policies—there exists more than ample evidence in the record to support the superior court's implied ruling that the Council's claims are not the sort that merit immunity from an attorney fee award. I address the remaining factors in turn.

This is not necessarily a case in which, had the Council been successful, numerous people would have benefitted. Rather, the Council's dispute with the Eyak Corporation and Sherstone can easily be viewed as a commonplace, private suit initiated by a small group of dissident shareholders, based upon their opposition to the board of directors' use of corporate assets. The business asset was timber held on the native corporation's private land; the proposed use was liquidation by clearcut. And although the Council would probably prefer to have the Eyak Corporation move in the direction of preservation

rather than economic development, this type of private, philosophical conflict between intra-corporate factions does not offer the type of far-reaching benefits that the public interest exception has facilitated in the past. *See, e.g., Thomas v. Bailey*, 611 P.2d 536, 538–39 (Alaska 1980) (Trustees for Alaska challenging constitutionality of voter initiative qualifies as public interest litigant); *Gilbert v. State*, 526 P.2d 1131, 1136 (Alaska 1974) (potential candidate for state senate attacking constitutionality of election residency requirements litigated issues in genuine public interest). Questions which primarily affect the private rights of the parties before the court lack the requisite public character to prohibit a fee award, even if some statutory or constitutional issues are involved. *Thomas*, 611 P.2d at 539.

Additionally, under the circumstances presented here, even if there were sound factual and legal support for the Council's claim against Sherstone under the Alaska Historic Preservation Act (AHPA), AS 41.35.010 *et seq.*, it cannot be said that only a private party could have been expected to bring suit. Under the express provisions of the AHPA, it is the State that is charged with the duty to enforce the Act. AS 41.35.220. Presumably, if it had detected any empirical data indicating that artifacts or gravesites were actually located at Eyak River East, the State would have taken appropriate measures, including refusing to authorize the cut and, if necessary, initiating an enforcement action under the AHPA. The fact that the State chose not to pursue enforcement in this case does not, by itself, demonstrate that the State was legally or even practically prevented from doing so. The Council should not be permitted to technically circumvent this requirement by simply naming the DNR as a defendant.

Finally, the record contains substantial evidence indicating that in filing this action, the Council was motivated by sizeable economic incentives. When the Council amended its complaint, it added claims for $200,000 in compensatory damages against Sherstone and the State. At stake was clearly a substantial sum of money. Alaska courts have disallowed public interest status for claims which sought far less. *See Murphy v. City of Wrangell*, 763 P.2d 229, 233 (Alaska 1988) (prisoner challenging city's failure to credit his sentence for good time served and seeking at least $25,000 in damages clearly possessed adequate economic incentive to bring suit). While it is true that when assessing a litigant's motivations for filing suit the court must consider all of the facts, I cannot subscribe to the majority's decision to essentially disregard the fact that the Council sought $200,000 in damages—perhaps the only objective factor available for our review.

Thus, I conclude that in reversing the fee award, the majority substitutes its own judgment for that of the superior court. Because I am persuaded that there is sufficient evidence in the record indicating that the Council does not qualify as a public interest litigant, and because the trial court may condition Alaska Rule 41(a)(2) voluntary dismissal on partial payment of attorney fees, I would affirm the attorney fee award.